Bobby E. WELCH and Kathleen
Newman, Petitioners–
Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.

No. 98–70930.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2000

Decided March 1, 2000

Wayne Hagendorf, Los Angeles, California, for the petitioners-appellants.

Carol Barthel, William S. Estabrook, attorneys, and Loretta C. Argrett, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before: MAGILL,[1] HAWKINS and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Bobby Welch and his wife Kathleen Newman appeal the tax court's judgment upholding the assessment of federal income tax deficiencies by the Commissioner of Internal Revenue ("Commissioner"). We have jurisdiction under 26 U.S.C. § 7482, and we affirm.

## I

On August 16, 1995, the Commissioner sent Welch and his wife a statutory notice of deficiency determining deficiencies in their federal income tax for the years 1986 through 1990. Welch had not timely filed tax returns for years 1986 through 1989 and did not do so until after the IRS contacted him in 1991. He filed his 1990 return in 1994. During all relevant tax years, Welch was engaged in several business endeavors. He owned an electrical contracting business, speculated in residential real estate development, leased residential apartments, published a magazine, and was involved in an export-import venture called "Star Global" along with Stanley Zurn and Paul Tallis.

For each tax year at issue, Welch reported and claimed net operating loss ("NOL") carryover deductions as follows:

| Year | Gross Receipts | Net Profit | NOL |
|------|---------------|------------|--------|
| 1986 | $751,169 | $7,713 | $80,853 |
| 1987 | 79,453 | 2,992 | 71,149 |
| 1988 | 64,647 | (166) | 65,455 |
| 1989 | 104,940 | 8,665 | 60,197 |
| 1990 | 179,111 | 9,392 | 51,532 |

However, Welch produced no records from which the gross receipts could be verified. In addition, the Commissioner, after performing a bank-deposit analysis to reconstruct Welch's approximate gross income, discovered unexplained amounts in several bank accounts for each of the four tax years at issue.[2] As of the time of trial, over $700,000 in total deposit amounts were still in dispute:

| Year | Total Deposits | Total Stipulated Deposits | Reported Gross Income | Deposits in Dispute |
|------|---------------|---------------------------|----------------------|---------------------|
| 1986 | $1,105,003 | $1,103,450 | $751,169 | $352,281 |
| 1988 | 150,181 | 145,338 | 67,107 | 78,231 |
| 1989 | 269,491 | 222,805 | 104,940 | 117,865 |
| 1990 | 422,926 | 344,954 | 165,843 | 165,843 |
|  |  |  | Total: | $714,220 |

Based upon the bank-deposit analysis, the Commissioner adjusted Welch's gross income for the tax years at issue to include the unreported income of over $700,000. Further, the Commissioner determined that Welch was not entitled to the NOL deductions claimed and that he was liable for increased self-employment income tax as a result of the unreported income. In total, the Commissioner calculated tax deficiencies in the amounts of $173,118 for tax year 1986; $25,958 for 1988; $49,091 for 1989; and $74,461 for 1990. Furthermore, the Commissioner found Welch liable for additions to tax for failure to file timely returns, negligence, and substantial understatement of gross income.

---

1. The Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

2. The deficiency for tax year 1987 is not in dispute and thus not at issue in this appeal.

In November 1995, Welch and his wife filed petitions in the United States Tax Court for redetermination of the tax deficiencies. The tax court consolidated both petitions for trial. At trial, Welch testified that the unreported bank deposits were nontaxable because they represented a combination of (1) business and personal loans made to him by his business associate Zurn and (2) deposits made in his account for the benefit of others.

Following trial, the tax court filed a memorandum opinion on March 30, 1998, and entered its decision on July 17, 1998. The tax court rejected Welch's claim that the unexplained bank deposits consisted of loans and "accommodation deposits." The tax court found that there was no evidence that the required NOL election had been made or that the NOL had not already been absorbed in the years before 1986, the earliest tax year at issue. Finally, the court held that Welch's self-employment income tax should be increased to reflect the unreported income, and that he was liable for additions to tax as a result of his failure to file timely returns, negligence, and substantial understatement of gross income.

II

■ The tax court did not clearly err in finding that certain monies deposited into Welch's bank accounts during the relevant tax years constituted taxable income. Deposits in a taxpayer's bank account are *prima facie* evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source. *See Calhoun v. United States*, 591 F.2d 1243, 1245 (9th Cir.1978). Our careful review of the record discloses that Welch failed to sustain his burden of proving that unexplained deposit amounts totaling well over $700,000 were derived from nontaxable sources.

■ First, Welch failed to establish that $700,000 of the disputed deposit amounts consisted of nontaxable loans. In the context of taxation, we have defined a

loan as "an agreement, either express or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree." *Commissioner v. Valley Morris Plan*, 305 F.2d 610, 618 (9th Cir.1962) (citing *National Bank of Paulding v. Fidelity & Cas. Co.*, 131 F.Supp. 121, 123 (S.D.Ohio 1954)). In classifying a loan, we examine the transaction as a whole. *See Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992); *Chism's Estate v. Commissioner*, 322 F.2d 956, 960 (9th Cir.1963); *Clark v. Commissioner*, 266 F.2d 698, 710–11 (9th Cir.1959). The conventional test is to ask whether, when the funds were advanced, the parties actually intended repayment. *See Clark*, 266 F.2d at 710–11; *Bergersen v. Commissioner*, 109 F.3d 56, 59 (1st Cir.1997).

■ However, courts have considered a number of other factors as relevant in assessing whether a transaction is a true loan, such as: (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan. *See, e.g., Crowley v. Commissioner*, 962 F.2d 1077, 1079 (1st Cir. 1992); *Frierdich v. Commissioner*, 925 F.2d 180, 182 (7th Cir.1991); *Piedmont Minerals Co. v. United States*, 429 F.2d 560, 563 (4th Cir.1970). Although the factors are non-exclusive and no single factor is dispositive, these indicia of a bona fide loan form a general basis upon which courts may analyze a transaction.

In this case, no promissory notes or other instruments were executed by the taxpayer to Zurn. The only written indications that monies had been advanced were

ambiguous notations in the taxpayer's handwritten business journal that did not correlate to the amounts deposited in the account. There was no stated interest, and trial evidence differed as to amount. There was no repayment schedule established by agreement or instrument. The only evidence of collateral was a grant deed given by taxpayer to Zurn. However, the deed unconditionally transferred title to property and did not bear the usual features of a secured transaction. Further, the taxpayer also argued the deed was evidence of repayment. Aside from the transfer of property by this deed, there was no other evidence of repayment. The taxpayer was apparently insolvent at the time the transfer was made, and the evidence cast doubt on whether Zurn had the financial ability to fund the loan. Finally, the conduct of the parties was inconsistent with the existence of a true loan. For example, repayment was never sought by Zurn and testimony was vague as to the loan amounts or purpose. Given these anomalies, the tax court did not clearly err in determining that the transaction between taxpayer and Zurn was not a loan.

■ Second, the tax court did not clearly err in finding that the alleged "accommodation deposits" made in Welch's account were taxable. Welch alleged that over $70,000 was deposited in the Star Global bank account by Sergio Antonucci, but that this was for Antonucci's use and benefit. Welch's business associate could only identify one deposit of $30,000 as being funded by Antonucci during the time the associate was employed by Star Global. There were also no patterns of withdrawal or other activity indicating that the money was Antonucci's property and not Welch's. Thus, the tax court did not clearly err in finding that all but $30,000 of the money Welch claimed Antonucci owned was, in fact, owned by Welch.[3]

3. The tax court also took the unusual step of rejecting a concession the Commissioner had made at the close of evidence that an additional $5,000 was not the taxpayer's money. However, the tax court explained its reason-

## III

The tax court did not clearly err in upholding the Commissioner's disallowance of Welch's NOL carryover deductions. Welch did not make the required election "in a manner prescribed by the Secretary," 26 U.S.C. § 172(b)(3). As a result, he failed to establish that the alleged 1984 NOL had not already been absorbed in the taxable years before 1986, the earliest tax year at issue in this case.

## IV

Welch's contention that he was not liable for increased self-employment income tax and certain additions to tax is unavailing. Our conclusion that the tax court committed no clear error in adjusting Welch's gross income for the relevant tax years necessarily disposes of this argument.

**AFFIRMED**

ing and, because the concession came at the close of evidence, the taxpayer did not suffer any prejudice. After carefully examining this matter, we conclude the tax court did not commit clear error.