T.C. Memo. 2005-232

UNITED STATES TAX COURT

NARIMAN TEYMOURIAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18106-03.                    Filed October 5, 2005.

<u>William E. Taggart, Jr.</u>, for petitioner.

<u>Davis G. Yee</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined the following
deficiencies and penalties in petitioner's Federal income tax:

| Year | Deficiency | Sec. 6662(a)[1] Penalty |
|------|-----------|------------------------|
| 1999 | $323,517.00 | $64,703.40 |
| 2000 | 207,511.00 | 41,502.20 |

After concessions,[2] the issues for decision are: (1) Whether petitioner received rental income of $16,200 in 1999 and $16,200 in 2000[3] (years in issue); (2) whether amounts disbursed to or on behalf of petitioner by Caspian Consulting Group, Inc. (Caspian) during the years in issue were properly characterized as loans or should be recharacterized as constructive dividends; and (3) whether petitioner is liable for accuracy-related penalties under section 6662(a) for the years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits, to the extent admitted, are incorporated herein by this reference. At the time

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner concedes that he received the following: (1) Capital gain of $137,880 in 1999; (2) additional income of $4,415.57 in 1999 from personal expenses charged by petitioner to Caspian's credit card and paid by Caspian; and (3) additional inoome of $10,000 in 2000 from petitioner's personal use of the company aircraft.

[3] In respondent's notice of deficiency, respondent determined that petitioner had received rental income of $19,800 for 1999 and $19,800 for 2000. However, respondent subsequently conceded that this amount was the result of a computational error and asserted that petitioner received only $16,200 in each year.

of filing the petition, petitioner resided in Atherton, California.

Petitioner has a doctoral degree in political science and master's degrees in political science and nuclear defense policies. Petitioner does not have a finance or accounting background. Petitioner works in software development.

In 1997, petitioner and Bradley K. Morrison (Mr. Morrison) formed a partnership, Prism Consulting Group (Prism), to develop software for the health care industry. On August 12, 1998, petitioner and Mr. Morrison organized Caspian, incorporated under the laws of the State of California. By the end of 1998, petitioner and Mr. Morrison transferred their partnership interests in Prism to Caspian in exchange for all of Caspian's stock. During 1998 and 1999, Prism's business operations were taken over by Caspian.

During the years in issue, petitioner owned 60 percent of Caspian's stock and served as the chief executive officer and president on the board of directors. Mr. Morrison owned the remaining 40 percent and served as chief technologist and secretary and treasurer on the board of directors. Petitioner and Mr. Morrison were the sole members of the board of directors.

During the years in issue, Caspian hired Cameron & Rolling to handle its accounting and tax matters. Craig Rolling (Mr. Rolling) was part owner of Cameron & Rolling. He received his

B.A. in business administration, a master's degree in taxation, and has been a certified public accountant (C.P.A.) for 20 years. Mr. Rolling personally prepared petitioner's and Caspian's tax returns for the years in issue, and he also provided general advice to petitioner and Caspian on tax, accounting, and other financial matters.

During 1999, petitioner applied for a residential loan. In connection with that loan, petitioner and his wife, Gail S. Ferrando-Teymourian (Ms. Ferrando-Teymourian), signed a Uniform Residential Loan Application (loan application). The loan application was not personally filled out by petitioner, but instead was prepared by Reza Zargari of Gateway Residential Funding. On the loan application, under "VI. Assets and Liabilities, Schedule of Real Estate Owned," petitioner reported that he had net rental loss of $948 from property located at 94 Grand Street[4] in Redwood City, California (Redwood City house), and net rental income of $1,350 from property located at 1271 Granville in Los Angeles, California (Los Angeles condominium). At the time the loan application was filled out, petitioner's primary residence was the Redwood City house, and petitioner's parents lived in the Los Angeles condominium.

---

[4] On the loan application, due to a typographical error, 94 Grand Street appears "94 Grant Street."

During 1999, Caspian made the following disbursements to petitioner:

| | |
|---|---|
| 9/16/1999 | $578,034.59 |
| 10/7/1999 | 65,000.00 |
| Total Disbursements For 1999: | $643,034.59 |

These disbursements were identified on Caspian's books as "Employee Advances".  At the end of 1999, the advances were converted to "notes" on Caspian's books.  Petitioner used these funds in connection with the purchase of a new home.

Petitioner and Ms. Ferrando-Teymourian jointly filed a Federal individual income tax return for 1999, reporting $233,097 of adjusted gross income and $136,519 of taxable income.[5]  They did not report the disbursements received from Caspian as income, nor did they report rental income.

During 2000, Caspian made the following disbursements to or on behalf of petitioner:

| | | |
|---|---|---|
| 1/05/2000 | Bill | $108.40 |
| 1/12/2000 | Check | 120,000.00 |
| 1/17/2000 | Credit Card Charges | 7,258.21 |
| 2/29/2000 | Transfer | 80,000.00 |
| 3/17/2000 | Credit Card Charges | 2,200.00 |
| 3/28/2000 | Transfer | 40,000.00 |
| 4/16/2000 | Credit Card Charges | 98.52 |
| 4/17/2000 | Bills | 52,000.00 |

---

[5]  Ms. Ferrando-Teymourian has a separate suit pending in this Court, docket No. 18139-03, and is not a party to the present case.

| | | |
|---|---|---:|
| 4/21/2000 | Check | 62,364.38 |
| 5/01/2000 | Check #5330 | 8,000.00 |
| 5/08/2000 | Bill | 5,421.00 |
| 5/10/2000 | Transfer | 20,000.00 |
| 5/17/2000 | Transfer | 100,000.00 |
| 5/18/2000 | Check | 3,000.00 |
| 5/18/2000 | Bill | 1,000.00 |
| 5/23/2000 | Check | 500.00 |
| 6/12/2000 | Transfer | 120,000.00 |
| 6/26/2000 | Bill | 140.35 |
| 7/17/2000 | Credit card charges | 75.78 |
| 7/18/2000 | Check | 2,862.74 |
| 8/14/2000 | Transfer | 100,000.00 |
| 8/16/2000 | Credit card charges | 1,019.45 |
| 8/28/2000 | Bill | 27,767.50 |
| 9/15/2000 | Check | 25,000.00 |
| 9/16/2000 | Credit card charges | 892.20 |
| 9/25/2000 | Transfer | 50,000.00 |
| 9/28/2000 | Bill | 88.70 |
| 10/23/2000 | Transfer | 34,239.55 |
| 11/02/2000 | Transfer | 20,000.00 |
| 11/15/2000 | Bill | 5,350.00 |
| 12/04/2000 | Check | 30,000.00 |
| 12/17/2000 | Credit cards charges | 368.13 |
| 12/27/2000 | Bill | 7,545.08 |
| Total Disbursements for 2000: | | $927,299.99 |

These disbursements were identified on Caspian's books as "1800100 Officer's Rec - NT". At the end of 2000, the advances were converted to "notes" on Caspian's books.

On December 29, 2000, petitioner used voluntary payroll deductions to reimburse Caspian $448,344.76. Of this amount, $48,344.76 represented payment of interest and $400,000 represented repayment of the disbursements. Caspian reported interest income on its 2000 tax return, reflecting petitioner's payment of interest.

Petitioner and Ms. Ferrando-Teymourian jointly filed a Federal individual income tax return for 2000, reporting $797,682 of adjusted gross income and $637,805 of taxable income. They did not report the disbursements made by Caspian as income, nor did they report rental income.

During the years in issue, Caspian made no formal declaration or payment of a dividend. Petitioner and Caspian did not execute formal loan instruments with respect to the amounts disbursed to or paid on behalf of petitioner.

In the fall of 2001, respondent's examining agent, Roseann Kacheris (Ms. Kacheris), began investigating Caspian's corporate tax returns for 1999 and 2000. During the course of her investigation, she also examined petitioner's individual income tax returns for the years in issue.

On July 24, 2003, respondent issued petitioner a notice of deficiency for 1999 and 2000. In the notice, respondent made the following increases to petitioner's taxable income:

1999

| Type of Adjustment | Amount of Increase |
|---|---|
| Capital gain | $137,880 |
| Itemized deductions | 24,149 |
| Exemptions | 5,155 |
| Rental income | 19,800 |
| Dividends | 647,290 |
| Total Adjustments for 1999: | $834,274 |

2000

| Type of Adjustment | Amount of Increase |
|---|---|
| Itemized Deductions | $15,263 |
| Rental Income | 19,800 |
| Dividends | 488,955 |

Total Adjustments for 2000:    $524,018

Respondent increased petitioner's tax liability by $323,517 and $207,511, and imposed section 6662(a) penalties of $64,703.40 and $41,502.20 for 1999 and 2000, respectively.

On October 22, 2003, petitioner filed his petition with the Court, alleging that he did not receive rental income, that respondent improperly recharacterized the loans as constructive dividends, and that he was not liable for the section 6662(a) accuracy-related penalties as set forth in respondent's notice of deficiency.

OPINION

A.  Petitioner Did Not Have Unreported Rental Income

Respondent determined that petitioner received but failed to report rental income in the amounts of $16,200 in 1999 and $16,200 in 2000.  Petitioner bears the burden of proof to show that respondent erred in making this determination.  Rule 142(a).

On the 1999 residential loan application, petitioner reported "net rental income" of $1,350 from his Los Angeles condominium.  Ms. Kacheris, respondent's examining agent, testified that her sole reason for determining that petitioner received rental income of $16,200 in 1999 and $16,200 in 2000 was from statements made by petitioner on the loan application.

However, petitioner credibly testified that, when Mr. Zargari was preparing the loan application, petitioner believed the loan application was asking for the "net rental value", or the amount petitioner would have received had he rented out the property. In addition, petitioner credibly testified that his parents were living in the Los Angeles condominium, he did not charge his parents rent, and he did not receive any rent.

Respondent argues that we do not have to accept petitioner's self-serving testimony, citing Mendes v. Commissioner, 121 T.C. 308 (2003). In Mendes, the taxpayer was contesting a 10-percent additional tax on an early distribution from a qualified retirement plan imposed under section 72(t). Id. at 319-320. The taxpayer argued that a bank had previously withheld the 10-percent additional tax but offered no documentation to verify his testimony. Id. The Court held that it did not have to rely on the taxpayer's self-serving testimony when he failed to present other evidence that the 10-percent additional tax was previously withheld.

Unlike the taxpayer in Mendes, petitioner is asserting that he never received income. We recognize the inherent difficulty in proving a negative, and because we find petitioner's testimony to be credible and his explanation of the loan application persuasive, we accept petitioner's testimony.

Given petitioner's credible and persuasive explanation of the loan application, we find that peitioner has met his burden of proof.  Based on the above, we hold that petitioner did not receive rental income during the years in issue and is thus not liable for any income tax deficiencies relating to rental income.

B.  Respondent Improperly Recharacterized Petitioner's Loans as Constructive Dividends

Respondent determined that disbursements made by Caspian to and on behalf of petitioner during the years in issue were constructive dividends and not loans.  The resolution of this issue does not depend on which party bears the burden of proof.  On the basis of the evidence in the record, we hold that the amounts disbursed to petitioner were loans.

Whether a corporation's disbursements to an employee-shareholder are loans or constructive dividends depends on whether, at the time of the disbursements, the employee-shareholder intended to repay the amounts received and the corporation intended to require payment. J.A. Tobin Constr. Co. v. Commissioner, 85 T.C. 1005, 1022 (1985); Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1338-1339 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1975); Miele v. Commissioner, 56 T.C. 556, 567 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1975).  If repayment was intended at the time of disbursement, the amounts are generally considered

loans.  Miele v. Commissioner, supra at 567.  On the other hand, if no repayment was intended, the amounts are to be considered constructive dividends.  Id.

This determination depends on all the facts and circumstances surrounding the transactions.  Estate of Chism v. Commissioner, 322 F.2d 956, 960 (9th Cir. 1963), affg. T.C. Memo. 1962-6; J.A. Tobin Constr. Co. v. Commissioner, supra at 1022; Miele v. Commissioner, supra at 567; Roschuni v. Commissioner, 29 T.C. 1193, 1201-1202 (1958), affd. 271 F.2d 267 (5th Cir. 1959). When an employee-shareholder is in substantial control of the corporation, such control invites special scrutiny.  Roschuni v. Commissioner, supra at 1202.  Mere declarations by an employee-shareholder that he intended a transaction to constitute a loan are insufficient if the transaction fails to meet more reliable indicia of debt.  J.A. Tobin Constr. Co. v. Commissioner, supra at 1022.

In making the necessary factual determination, courts have looked to a number of objective factors, including:

> (1) [W]hether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan.

<u>Welch v. Commissioner</u>, 204 F.3d 1228, 1230 (9th Cir. 2000), affg. T.C. Memo. 1998-121; see also <u>J.A. Tobin Construction Co. v. Commissioner</u>, <u>supra</u> at 1022.  No single factor is controlling, and the transaction must be examined as a whole.  <u>Welch v. Commissioner</u>, <u>supra</u> at 1230.  We address each of these factors in turn.

1.  <u>Petitioner's Promise To Pay Was Not Evidenced by a Note</u>

The absence of a note or other loan documentation is indicative of a constructive dividend.  <u>Miele v. Commissioner</u>, <u>supra</u> at 568-569; see also <u>Roschuni v. Commissioner</u>, <u>supra</u> at 1201-1202; <u>Jones v. Commissioner</u>, T.C. Memo. 1997-400, affd. without published opinion 177 F.3d 982 (11th Cir. 1999); <u>Weigel v. Commissioner</u>, T.C. Memo. 1996-485.  However, loans without documentation are not uncommon between a shareholder and a closely held corporation, and such documentation is not a prerequisite to finding that a loan exists.  <u>Miele v. Commissioner</u>, <u>supra</u> at 568-569; <u>Weigel v. Commissioner</u>, <u>supra</u>.

Petitioner stipulated that he did not execute formal loan documents with respect to the disbursements made by Caspian during the years in issue.  While this factor alone is not determinative, it weighs in favor of finding a constructive dividend.

2.  Petitioner Paid $48,344.76 in Interest

The payment of interest indicates the existence of a loan. Crowley v. Commissioner, 962 F.2d 1077 (1st Cir. 1992), affg. T.C. Memo. 1990-636; see also Roschuni v. Commissioner, supra at 1201-1202; Jones v. Commissioner, supra.

At trial, Mr. Rolling testified that an interest rate of 6.2 percent was charged. On the other hand, petitioner testified that he was uncertain as to the percentage, but he believed the An interest rate was prime plus one. Respondent argues that the contradictory testimony of Mr. Rolling and petitioner casts doubt on whether interest was charged. However, petitioner, Mr. Rolling, and Mr. Morrison all credibly testified that they knew interest was being charged. In addition, petitioner paid $48,344.76 in interest on December 29, 2000. While there may have been some confusion as to the rate of interest, the stated intent of the parties and the actual payment of interest weighs in favor of finding a loan.

3.  There Was No Fixed Schedule for Repayment

The lack of a fixed schedule for repayment is indicative of a constructive dividend. See Crowley v. Commissioner, supra; Roschuni v. Commissioner, supra at 1201; Jones v. Commissioner, supra. Petitioner testified at trial that there was no fixed schedule for repayment. This factor weighs in favor of finding a constructive dividend.

4.  No Collateral Secured Repayment of the Loan

The lack of collateral pledged to secure repayment is indicative of a constructive dividend.  See Crowley v. Commissioner, supra at 1083; Roschuni v. Commissioner, supra at 1201-1202; Jones v. Commissioner, supra.  Petitioner testified that he was not asked to provide collateral, but he understood his shares of Caspian would secure repayment.  Under California State law, a creditor can acquire an enforceable security interest in collateral by having the debtor sign a security agreement and deliver the certificated security to the secured party.  Cal. Com. Code secs. 8301, 9203(b) (West 2005).  The record is devoid of any evidence that petitioner signed a security agreement or delivered his Caspian stock to Caspian.  Therefore, we find that there was no collateral, including the Caspian stock, pledged to secure repayment.  This factor weighs in favor of finding a constructive dividend.

5.  Petitioner Made Repayments of $400,000

Repayments of the amounts disbursed indicate the existence of a loan.  Crowley v. Commissioner, supra at 1083; see also Miele v. Commissioner, supra at 568; Roschuni v. Commissioner, supra at 1201; Weigel v. Commissioner, supra.  However, to be persuasive, the amounts of repayments in comparison to the amounts owed must be substantial and not merely nominal.  Miele v. Commissioner, supra at 568.

During the years in issue, Caspian made disbursements to or on behalf of petitioner in amounts totaling $1,570,334.58. Caspian reflected the disbursements on its books as either advances, officer's receivables, or notes. On December 29, 2000, petitioner repaid a total of $448,344.76, of which $400,000 was applied to reduce the balance of the notes receivable accounts. Petitioner's repayment of slightly more than 25 percent of the total disbursements was substantial and not merely nominal. This factor weighs in favor of finding a loan.

6. Petitioner Had a Reasonable Prospect of Repayment

A reasonable prospect of repayment indicates the existence of a loan. See Welch v. Commissioner, 204 F.3d 1228, 1231 (9th Cir. 2000). A taxpayer's insolvency or financial difficulty casts doubt on the ability to repay and thus on the characterization of a disbursement as a loan. See id.

Petitioner and his wife reported adjusted gross income of $233,097 and $797,682 for 1999 and 2000 respectively. On December 29, 2000, petitioner repaid $400,000, leaving $1,170,334.58 outstanding. Given petitioner's income and history of repayment, petitioner had a reasonable prospect of repaying the remainder of the disbursements. This factor weighs in favor of finding a loan.

7. The Parties Involved Treated the Disbursements as Loans

The conduct of the parties may indicate the existence of a

loan.  <u>Morrison v. Commissioner</u>, T.C. Memo. 2005-53; see <u>Welch v. Commissioner</u>, <u>supra</u> at 1230; <u>Baird v. Commissioner</u>, 25 T.C. 387, 395 (1955).

Petitioner credibly testified that, at the time the disbursements were made, he intended the disbursements to be loans, he believed that interest would be charged, and he understood that he would have to repay the amounts disbursed. During 2000, petitioner paid $48,344.76 in interest and repaid $400,000 of the disbursements.

Mr. Morrison, the minority shareholder of Caspian, credibly testified that he understood the amounts disbursed to petitioner were loans, and he expected petitioner to repay the loans together with interest.

In addition, Caspian reported petitioner's $48,344.76 payment as interest income on its 2000 income tax return. Caspian treated the disbursements to petitioner as notes receivable, indicating Caspian's expectation that the amounts would be repaid.

The behavior of the parties weighs heavily in favor of finding a loan.

<u>Summary</u>

While three of the seven factors weigh in favor of finding a constructive dividend, we find those factors to be less persuasive in the present case.  In transactions between

shareholders and closely held corporations, formalities are often not followed. A lack of formality does not preclude treatment of disbursements as loans. See Miele v. Commissioner, supra at 568-569. The absence of a note does not outweigh the behavior of petitioner or Caspian in treating the disbursements as loans. In addition, the fact that petitioner paid back a substantial portion of the disbursements indicates that the lack of collateral and the lack of a set repayment schedule did not diminish his intent to repay.

Petitioner and Mr. Morrison understood the amounts disbursed to be loans. Petitioner acted in a manner consistent with the existence of a loan, as demonstrated by his payment of interest and substantial repayment of a portion of the amounts disbursed. Due to his salary and his history of repayment, petitioner had a reasonable prospect of repaying the disbursements in full. Based on the evidence in the record, we hold that the amounts disbursed to petitioner during the years in issue were loans.[6]

C. Petitioner is Not Liable for Section 6662 Accuracy-Related Penalties

Respondent assessed section 6662(a) penalties of $64,703.40 and $41,502.20 against petitioner for 1999 and 2000,

---

[6] This finding does not include the following amounts conceded by petitioner: (1) Capital gain of $137,880 received in 1999, and (2) additional income of $4,415.57 and $10,000 received in 1999 and 2000, respectively.

respectively. Petitioner contests these penalties, arguing that there was no underpayment of tax, or in the alternative, petitioner had reasonable cause for his underpayment of taxes.

Section 6662(a) imposes an accuracy-related penalty of 20 percent of the underpayment of tax attributable to negligence or disregard of the rules or regulations,[7] or attributable to a substantial understatement of income tax.[8] Sec. 6662(a), (b)(1) and (2). However, no penalty will be imposed if the taxpayer had reasonable cause for the underpayment of tax and the taxpayer acted in good faith. Sec. 6664(c); secs. 1.6662-3(a), 1.6664-4(a), Income Tax Regs.

The Commissioner bears the burden of production with respect to penalties. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). However, the taxpayer must show that he had reasonable cause and acted in good faith. Rule 142(a).

Petitioner conceded that he received, but did not report, long-term capital gain of $137,880, additional income of $4,415.57 in 1999, and additional income of $10,000 in 2000. We

---

[7] Negligence is defined as the "failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard." Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

[8] There is a substantial understatement of income tax for any year if the amount of understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5000. Sec. 6662(d).

do not need to reach the issues of whether the resulting underpayments were substantial or were due to negligence because we find petitioner had reasonable cause and acted in good faith.

A taxpayer's reliance on the advice of a professional as to the tax treatment of certain items does not automatically constitute reasonable cause. Neonatology Associates v. Commissioner, 115 T.C. 43, 98-99 (2000), affd. 299 F.2d 221 (3d Cir. 2002); see sec. 1.6664-4(c)(1), Income Tax Regs. For a taxpayer to reasonably rely on the advice of a professional, the taxpayer must show: (1) The adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Associates v. Commissioner, supra at 98-99.

Mr. Rolling has a B.A. in business administration and a master's degree in taxation. He is a licensed C.P.A. and has been practicing for more than 20 years. During the years in issue, Mr. Rolling prepared tax returns for petitioner and Caspian, and served as a general consultant to both on tax-related issues. Throughout the course of Mr. Rolling's testimony, we found him to be a competent professional who had sufficient expertise to justify petitioner's reliance. Based upon the testimony of petitioner and Mr. Rolling regarding the

amounts of income not reported but eventually conceded by petitioner, the characterization of those amounts was open to reasonable doubt at the time petitioner filed his returns. Based upon Mr. Rolling's testimony and on other evidence submitted, we find that Mr. Rolling was provided with necessary and accurate information by both petitioner and Caspian. Finally, based upon petitioner's credible testimony, we find that petitioner relied on Mr. Rolling for the preparation of his tax returns during the years in issue, and that petitioner's reliance was in good faith.

For the foregoing reasons, we conclude that petitioner reasonably and in good faith relied on the advice of a competent professional, and we hold that petitioner is not liable for the section 6662(a) penalties.

Conclusion

We hold that petitioner did not receive rental income during the years in issue and is thus not liable for any income tax deficiencies relating to rental income. We further hold that disbursements made by Caspian to and on behalf of petitioner were loans and not constructive dividends. Finally, we hold that petitioner is not liable for accuracy-related penalties.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.