T.C. Memo. 2012-153

UNITED STATES TAX COURT

JOHN H. SCHOPPE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9867-10.                        Filed May 30, 2012.

John H. Schoppe, pro se.

<u>Inga C. Plucinski</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined against petitioner deficiencies for the

six years in issue and additions to tax for failure to file, failure to pay, and failure to

make estimated tax payments as follows:

Additions to tax[1]

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|-----------------|-----------------|-----------|
| 2002 | $9,945 | $1,943.33 | $2,159.25 | $238.78 |
| 2003 | 10,629 | 2,391.53 | 2,657.25 | 274.24 |
| 2004 | 16,590 | 3,732.75 | 4,147.50 | 475.41 |
| 2005 | 12,314 | 2,770.65 | ([1]) | 493.90 |
| 2006 | 9,048 | 2,035.80 | ([1]) | 428.18 |
| 2007 | 7,095 | 1,596.38 | ([1]) | 322.90 |

[1]To be computed in the Rule 155 calculation.

The primary issue for decision is whether petitioner has adequately substantiated deductions claimed for business expenses.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner is 68 years old and resides in Utah.

In spite of years of poor health and illness (namely, liver disease and degenerative arthritis), for many years petitioner has been actively and primarily engaged as a sole proprietor in a number of real estate related activities, and petitioner has held various business licenses. Petitioner was a real estate agent,

---

[1]All section references are to the Internal Revenue Code applicable to the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

broker, consultant, appraiser, and an instructor of real estate licensing classes, as well as a financial planner and an insurance agent.

Petitioner was engaged full time in his various real estate related and other activities, generally six days a week. At least for some of the years before us, petitioner owned some rental property.

Petitioner kept track of expenses incurred each day on a calendar for each year on which he would make only vague notations of the amounts and payees relating to the expenses (e.g., "$15.95 Ho Jo"). Also on the calendar, petitioner would make brief notations of his automobile or truck mileage driven each day. Generally, neither on his calendar nor anywhere else would petitioner note or describe the business purpose for his expenses and mileage. Although available at the trial and referenced on direct and cross-examination of petitioner, none of petitioner's calendars applicable to 2002 through 2007 was offered into evidence.

Although it is not completely clear from the record regarding petitioner's banking practices, it appears that petitioner maintained one checking account into which he deposited income from his real estate related activities and out of which petitioner paid the bulk of his business and personal expenses.

Petitioner did not timely file Federal income tax returns for the years in issue. Also, except for small amounts of Federal income tax withheld from wages he

received in two of the years in issue, petitioner did not pay (and has not paid) any Federal income tax for the years in issue.

On audit respondent summoned petitioner's bank records. On the basis of deposits into petitioner's bank accounts to calculate his unreported real estate related income and third-party information to calculate petitioner's unreported wages, and under authority of section 6020(b), respondent prepared for petitioner substitutes for returns and notices of deficiency and charged petitioner with the following income:

| Income from | 2002 | 2003 | 2004 | 2005[1] | 2006 | 2007 |
|---|---|---|---|---|---|---|
| Real estate | $29,606 | $42,202 | $58,449 | $24,664 | $35,471 | $25,728 |
| Wages | 11,300 | --- | --- | 17,881 | 1,194 | 3,945 |
| Unemployment compensation | 3,752 | --- | --- | --- | --- | --- |
| Social Security | --- | --- | --- | --- | 3,701 | 6,558 |
| Total | 44,658 | 42,202 | 58,449 | 42,545 | 40,366 | 36,231 |

[1]Per respondent's stipulation, the above amounts for 2005 represent some adjustments to the audit determination.

In preparing the substitutes for returns, because of lack of substantiation by petitioner, respondent allowed petitioner no business expense deductions against the real estate related income charged to petitioner. For each year respondent did allow petitioner a standard deduction and a personal exemption.

On November 6, 2009, petitioner finally submitted to respondent documents that petitioner claims represent his Federal income tax returns for 2002 through 2007. For each of the years in issue except 2005, petitioner's untimely tax returns show total real estate related income close to the amount of income respondent charged to petitioner in the substitutes for returns and in the notices of deficiency.[2]

However, petitioner's untimely 2002, 2005, 2006, and 2007 Federal income tax returns also show substantial business expenses that offset the reported real estate related income and reflect net business losses. Petitioner's untimely 2003 and 2004 Federal income tax returns show net income from his real estate related activities of $9,260 and $10,378, respectively, but itemized deductions and a personal exemption offset the reported income for each year.

Respondent has not processed petitioner's untimely Federal income tax returns, and respondent has not allowed petitioner any of the claimed business expense or itemized deductions reflected on petitioner's untimely Federal income tax returns.

---

[2]For 2005 respondent charged petitioner with $38,421 in real estate related income. Petitioner's untimely 2005 Federal income tax return reflected total real estate related income of $18,755.

OPINION

Gross income includes all income from whatever source. Sec. 61(a); see also United States v. Burke, 504 U.S. 229, 233 (1992) ("The definition of gross income under the Internal Revenue Code sweeps broadly."). Bank deposits are considered prima facie evidence of income; the taxpayer bears the burden of establishing that such deposits were derived from nontaxable sources. Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), aff'g T.C. Memo. 1998-121; see also Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994); Harmer v. Commissioner, 4 Fed. Appx. 673, 676 (10th Cir. 2001).

At trial petitioner did not seriously challenge respondent's determinations of income, and no credible evidence suggests errors in respondent's income determinations for each year in issue.[3]

Petitioner now claims, however, that the amounts of the business expense and itemized deductions shown on his untimely Federal income tax returns for 2002 through 2007 should be allowed.

---

[3]Respondent does acknowledge minor adjustments that need to be made to respondent's income determinations. Those adjustments are to be made in the Rule 155 calculation.

Generally, determinations made by respondent in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise.[4] See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Specifically with regard to claimed business expense and itemized deductions, the taxpayer bears the burden of proof by a preponderance of the evidence. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The taxpayer's burden includes the burden of substantiation, Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976), and a tax return is not itself evidence of a taxpayer's correct income or allowable expenses, Taylor v. Commissioner, T.C. Memo. 2009-235 (citing Lawinger v. Commissioner, 103 T.C. 428, 438 (1994)).

Petitioner states that his business activities were atypical, that his business expenses and itemized deductions fully offset his income, and that he does not owe any Federal income tax. Petitioner testified about and described some of his business expenses. Petitioner states that because he was confident he owed no Federal income tax and was "willing to forfeit" to the Government tax refunds he

---

[4]For obvious reasons, no shift in the burden of proof in this case is appropriate. See sec. 7491(a)(2).

claims he was owed for at least some of the years in issue, petitioner did not worry about and did not timely file Federal income tax returns for 2002 through 2007.

Petitioner complains that respondent's audit and trial representatives steamrolled him and refused to accept the obvious business nature of all of his activities and that respondent summarily rejected expenses shown on his calendars and reflected by checks and credit card charges. Petitioner claims that essentially all of his expenses represent business expenses.

In response to the Court's suggestion at trial, an effort was made to reach a settlement as to an estimated percentage of petitioner's real estate income that would be treated as business expenses. Petitioner, however, would have none of it. Petitioner emphatically refers to the financial status of his various activities as "minus, minus, in the hole".

Petitioner notes that most real estate people pay their "agents" a commission of around 60%, but insists that his business activities are not reflected by the norm, that his business model is "odd", that he is an "enigma", and that 90-95% of his real estate related income was passed on as commission expenses to six or seven independent real estate agents that assisted him.

At trial petitioner also suggested that some of the amounts deposited into his bank accounts and treated by respondent as real estate income constituted

nontaxable funds he received as loans from his commission agents in order to provide him cashflow when his business was slow.

At trial, however, petitioner did not call any of his commission agents as a witness. He did not identify any of the checks he allegedly wrote as commission checks, and he did not identify any of the specific amounts deposited into his bank accounts over the years as nontaxable loans received.

On cross-examination about the business or personal nature of expenses shown on his calendars and in his check register, petitioner stated bluntly: "So if it's business or personal, it's still a cost, and it's mostly business because this is business."

Testifying about the business or personal nature of a number of $15 overdraft charges, petitioner stated: "In my mind, if I'm overdrawn, it's because I don't have income from my business. So if it's not income, it's a business expense."

Asked at trial to explain some of the items making up the business travel expense deductions shown on his untimely Federal income tax returns, petitioner described, among other items, a January 16, 2007, Visa credit card charge as payment for a business luncheon; but petitioner then acknowledged that the $38 expense was in payment for lift tickets at Snow Basin, a popular Utah ski resort.

Authority exists for a court to estimate a taxpayer's business expenses where a reasonable basis therefor exists. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Business expenses subject to section 274(d) (e.g., entertainment and away-from-home meal and lodging expenses), however, may not be estimated. See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

But for the reasonable-basis and section 274(d) limitations on the authority under Cohan to estimate a taxpayer's deductible business expenses, we would be inclined to attempt an estimate of petitioner's allowable business expenses. However, because of the difficulty on the record before us of knowing with any confidence the correct nature of petitioner's expenses and because of the significant portion of petitioner's claimed expenses that appears to be subject to section 274(d), we decline to make any estimate under Cohan of petitioner's deductible business expenses.

Other than one 2006 charitable contribution deduction of $807, petitioner has not substantiated any of the claimed itemized deductions.

## Conclusion

For 2002 through 2007 we sustain respondent's determinations of the amounts of petitioner's income and wages, and petitioner is not entitled to any of

the business expense deductions claimed on his untimely Federal income tax returns.

With one exception, petitioner has not substantiated any of the alleged itemized deductions claimed on his untimely Federal income tax returns. The claimed itemized deductions are not allowed, and petitioner is entitled to a standard deduction for each year.

Accordingly, we sustain respondent's deficiency determination against petitioner for each of the years involved herein, subject to adjustments respondent has agreed to.

Because we have sustained respondent's deficiency determinations against petitioner, respondent has met his burden of production with regard to each of the additions to tax respondent determined against petitioner. See sec. 7491(c).

Petitioner has established neither reasonable cause nor lack of willful neglect with regard to the Federal income tax deficiencies that we today sustain. For each year in issue we sustain respondent's imposition of the section 6651(a)(1) and (2) and 6654 additions to tax for late filing of his tax returns, for late payment of his Federal income tax liabilities, and for underpayment of his annual estimated tax liability. See Wheeler v. Commissioner, 127 T.C. 200, 207-

212 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980).

Decision will be entered

under Rule 155.