IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

XIU FENG JIANG,              )
                                 )
        Plaintiff,         )   TC-MD 220060G
                                 )
        v.                   )
                                 )
DEPARTMENT OF REVENUE,    )
State of Oregon,           )
                               )
        Defendant.       )   **DECISION**

This appeal concerns adjustments to 2017 pass-through income from Plaintiff's personal shopping business. Plaintiff was represented at trial by his certified public accountant, Steven Cheng, and Plaintiff testified by telephone through court-appointed Mandarin Chinese interpreters.[1] Defendant was represented at trial by its auditors, Stacie Rush and Fadi Aboudas. Plaintiff's Exhibits A to F and Defendant's Exhibits A to H were admitted.

## I. STATEMENT OF FACTS

In 2017, Plaintiff conducted a personal shopping business, which involved his purchasing items from Portland- and Salem-area stores and shipping them to customers in the United States and China. Following an audit of Plaintiff's 2017 return that included a bank-deposit analysis, Defendant increased Plaintiff's Schedule C gross receipts by over $600,000 and reduced his allowable deductions. On appeal, Plaintiff seeks to partially reverse Defendant's adjustments by decreasing his gross receipts $185,930 and deducting $17,265.95 for car and truck expenses.

---

[1] Defendant challenged whether the man on the telephone truly was Plaintiff. At a previous telephone hearing, a woman had identified herself as Plaintiff, and in the Complaint Plaintiff is described as "Ms. Jiang, a homemaker with young children." At trial, the man on the telephone testified that he was Plaintiff and that his wife had previously appeared on his behalf because he had been working. There is inadequate evidence for the court to finally resolve the question of Plaintiff's identity. Solely for purposes of deciding this appeal in the Magistrate Division, and without prejudice to any future proceeding, the court accepts the man's testimony that he is Plaintiff.

Plaintiff also seeks to claim a deduction for $1,246 in bank charges that he did not include on his return.

A.    *Gross Receipts*

In 2017, Plaintiff received five wire transfers totaling $185,930.[2]  (Def's Ex C at 5–8, 14.)  He testified that those moneys were the proceeds of loans from family members.

The alleged loans are evidenced by five "loan documents" printed in Hanzi, with Latin-alphabet names and Arabic-numeral dates handwritten in blanks.  (Def's Ex D at 1–5.)  The five documents were largely similar to one another, and the parties stipulated to a translation prepared by Defendant during the audit.  (*Id*. at 6–7.)  Each of the documents is dated in 2017 and signed beneath the date.  Each of the documents shows a principal amount (ranging from $28,000 to $49,990), an interest rate, and a maturity date exactly four years after the signature date, in 2021.

Plaintiff testified that the loan documents were prepared in response to the auditor's request for documentation—that is, sometime in 2020 or 2021.  He testified that in his culture, loans between family members were customarily made orally and without interest; the interest shown on the loan documents was put there to satisfy the auditor's expectations.  Plaintiff testified that the lenders told him the loans would be given as gifts if he was unable to repay them.

Bank records from Chase show that Plaintiff initiated six wire transfers in 2022 to the five persons named as lenders on the loan documents with the stated purpose of "Loan

/ / /

---

[2] Both parties accept that figure.  (Def's Ex A at 2; *see* Compl at 2.)  The line item on Plaintiff's bank statement for the final wire transfer shows at least $40,000, but is otherwise illegible.  (*See* Def's Ex C at 14.)  The total accepted by the parties implies the final wire transfer was $49,990, which is the amount shown on the corresponding loan document.  (*See* Def's Ex D at 5.)

Repayment."[3]  (Ptf's Ex F at 1–18.)  The wire transfers occurred on May 31, July 18, and July 20 in amounts ranging from $1,000 to $2,999.40.  (*Id.*)

B.      *Car and Truck*

Plaintiff testified that he drove between various regional Costco stores and malls to buy items for his customers.  He testified that he drove to multiple Costco stores because individual stores limited the quantities he could purchase.  Plaintiff claimed a $22,363 expense deduction based on mileage, which Defendant disallowed entirely.  (Def's Ex H at 16–18.)

Plaintiff did not maintain a mileage log.  In preparation for trial, he created a table from memory, showing round-trip travel to each of eight locations twice per week for 51 weeks in 2017. (Ptf's Ex B at 1.)  The total mileage shown is 32,272.8.  (*Id.*)  Based on a 2017 standard mileage rate of $0.535 per mile, Plaintiff claims he is entitled to a $17,265.95 car and truck expense deduction.  (*Compl* at 3.)

C.      *Bank Charges*

Plaintiff's Complaint includes a table summarizing $1,246.30 in bank charges incurred in 2017.  (Compl at 3.)  Although Plaintiff provided no further documentation of those charges, Defendant submitted a few partial bank statements from Bank of America and Wells Fargo that show $173 in service fees, a "cash deposited fee" of between $200 and $300 (the line item on November 30 is illegible), and at least one $6 overdraft fee.  (Def's Ex C at 4, 6, 7, 9, 11, 13.) Additional charges viewable on the statements include many purchases from "www.costco.com" and other online retailers, as well as payments to T-Mobile, Comcast, NW Natural, and Toyota Financial.  (*Id.* at 8, 10.)

---

[3] The English spelling of one recipient's name, Yingwen Han, differs from the spelling on the loan document, Yinwen Han.  (*Compare* Def's Ex D at 5 *with* Ptf's Ex F at 16.)

## II. ANALYSIS

At issue is whether the wire transfers into Plaintiff's account are income and whether he is entitled to business expense deductions for mileage and bank charges. The federal Internal Revenue Code (IRC) applies to this state tax matter because Oregon defines taxable income by reference to it, subject to certain modifications not pertinent here. *See* ORS 316.022(6); 316.048.[4] Because Plaintiff seeks affirmative relief, he must bear the burden of proof. *See* ORS 305.427.

A.      *Gross Receipts*

Where a taxpayer's books do not clearly reflect income, the Department of Revenue may demonstrate unreported income "by any practicable proof that is available in the circumstances of the particular situation." *Brenner v. Dept. of Rev.*, 9 OTR 299, 306–07 (1983) (quoting *2 Mertens Law of Federal Income Taxation* § 12.12); *cf. U.S. v. Doyle*, 234 F2d 788, 793 (7th Cir 1956). One way of proving income is by a bank deposit analysis, which involves inferring that deposits into a taxpayer's bank account are income. *See Brenner*, 9 OTR at 302 n 2; *Doyle*, 234 F2d at 793. A taxing authority performing a bank deposit analysis "assumes a special responsibility to be thorough and particular" and "must eliminate any nonincome items of which he has knowledge, such as gifts, loans, and transfers between the taxpayer's various bank accounts." *Purple Heart Patient Ctr. v. Comm'r*, 121 TCM (CCH) 1260, 2021 WL 1177677 at *13 (2021). Remaining deposits "are *prima facie* evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source." *Welch v. Comm'r*, 204 F3d 1228, 1230 (9th Cir 2000).

/ / /

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

In this case, Plaintiff alleges that the five wire transfers into his bank account were loans. Loans are not income because the money received is matched by a debt incurred; the money and the debt cancel each other out, so neither receiving nor repaying a loan affects tax liability. *Comm'r v. Tufts*, 461 US 300, 307, 103 S Ct 1826, 75 L Ed 2d 863 (1983).

A transaction is only a loan if there is a contractual obligation to repay the money; *i.e.*, if, at the time the money is given, "the debtor intends to repay the loan and the creditor intends to enforce the repayment." *Dufresne v. Comm'r*, 118 TCM (CCH) 97, 2019 WL 3361693 at *4 (2019) (holding cash deposits from taxpayer's mother were not loan repayments). Recognizing that parties' intentions can be difficult to prove, courts have identified various factors indicative of a bona fide loan, set forth in the margin. *See Welch v. Comm'r*, 204 F3d 1228, 1230 (9th Cir 2000).[5]

Here, Plaintiff's testimony was that his relatives expected him to repay the wire transfers if he could, but that the money would be treated as a gift if he did not. The parties did not initially write their agreements down and did not discuss interest, repayment schedules, or collateral; the loan documents were created during the audit and backdated. The circumstances of the transfers therefore show few indications of a bona fide loan. *See Welch*, 204 F3d at 1230. Apart from the circumstances, however, Plaintiff's testimony shows that the ones transferring money to him did not intend to enforce repayment. Plaintiff may have had a moral obligation to repay the money, but without an intention on the part of his creditors to enforce repayment, the

/ / /

---

[5] The *Welch* factors are: "(1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan."

wire transfers were not loans for purposes of determining tax liability. *See Dufresne*, 2019 WL 3361693 at *4.

If the wire transfers were gifts, they might be excluded from gross income. *See* IRC § 102. However, given the contradictory and vague nature of the evidence available, the court cannot make such a finding. Plaintiff has not met his burden of showing that the deposited money was derived from a nontaxable source. *See Welch*, 204 F3d at 1230.

B.    *Car and Truck*

While reasonable business expenses are generally deductible, personal automobile expenses require a heightened level of substantiation. *See* IRC §§ 162, 274(d). A deduction is only allowed for such expenses where the mileage, date, and business purpose of each trip are substantiated "by adequate records or by sufficient evidence corroborating the taxpayer's own statement." IRC § 274(d); Treas Reg § 1.274–5T(b)(6). The "adequate records" requirement is met by maintaining a mileage log or similar record. Treas Reg §§ 1.274–5T(c)(2); 1.274–5(c)(2). A mileage log need not be contemporaneous; however, it will be more credible if it is made "at or near the time of the expenditure or use." *See* Treas Reg § 1.274–5T(c)(1).

In the present case, the only documentation of Plaintiff's car and truck expenses is a mileage summary prepared by Plaintiff from memory before trial, over five years after the trips. At such a remove, a summary from memory could not credibly record the dates for each trip, and Plaintiff does not attempt to do so. No other evidence corroborating Plaintiff's summary has been presented; the credit card statements do not even show that Plaintiff's Costco purchases occurred at stores as opposed to online. Without adequate records or sufficient corroborating evidence, no deduction for Plaintiff's car and truck expenses is possible. *See* IRC § 274(d).

/ / /

C.    *Bank Fees*

A deduction is allowed for ordinary and necessary business expenses, but not for personal expenses unless expressly permitted by the code.  IRC §§ 162(a); 262(a).  The federal Tax Court has distinguished between types of bank charges, evaluating the evidence in light of the testimony and allowing the deduction only where the charges incurred are ordinary and necessary for a particular type of business.  *See*, *e.g.*, *King v. Comm'r*, 79 TCM (CCH) 1345 (2000) (allowing charge for "bank analysis" but not for returned checks in newsstand business); *Bailey v. Comm'r*, 62 TCM (CCH) 437 (1991), *aff'd*, 968 F2d 25 (11th Cir 1992) (disallowing overdraft fees exceeding $30,000 per year as not ordinary and necessary for laundry business).

In this case, the evidence does not show that the bank charges Plaintiff incurred were for a business purpose.  The bank statements show charges incurred for utility bills and car payments.  Plaintiff offered no explanation for those charges, which appear unrelated to his business.  Given the intermingling of business and personal expenses, Plaintiff has not met his burden of showing the bank charges were incurred for specifically business purposes.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

The available evidence does not show that Plaintiff's incoming wire transfers were from a nontaxable source or that the bank charges were for a business purpose, and there is insufficient documentation of Plaintiff's car and truck expenses. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal be denied.


Dated this _____ day of February 2024


_____
POUL F. LUNDGREN
MAGISTRATE


***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***


***This document was signed by Presiding Magistrate Poul F. Lundgren and entered on February 6, 2024.***