T.C. Memo. 2010-75

UNITED STATES TAX COURT

C. MICHAEL AND GWENDOLYN E. WILLOCK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25616-06.                    Filed April 14, 2010.

C. Michael and Gwendolyn E. Willock, pro se.

Jeanne Gramling, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  On September 14, 2006, respondent mailed to
petitioners a notice of deficiency (notice) that determined
deficiencies in their Federal income tax of $140,135 and $154,888
for tax years 2002 and 2003, respectively, and penalties under

section 6662[1] of $28,027 and $30,978 for 2002 and 2003, respectively. Petitioners, then residing in the State of North Carolina, timely petitioned this Court for redetermination of the deficiencies and penalties.

The issues for decision as framed by the parties are:

(1) whether petitioners' car and truck expenses were ordinary and necessary business expenses, and whether petitioners adequately substantiated those expenses;

(2) whether petitioners' vehicle was placed in service during taxable year 2003;

(3) whether petitioners adequately substantiated as dental practice expenses their travel and entertainment expenses for their trip to Hawaii, professional fees paid to an individual for marketing and networking training, and fees for janitorial services;

(4) whether petitioners' losses from their dental equipment leasing business are properly deductible from the income they received from their condominium rental;

(5) whether petitioners' participation in a multi-level marketing company and an organic farming business was for profit;

(6) whether certain deposits made to petitioners' joint

---

[1]Section references are to the Internal Revenue Code of 1986 (Code), as amended. Rule references are to the Tax Court Rules of Practice and Procedure.

bank account are properly includable as income, or whether those deposits repaid a loan made to their son; and

(7) whether petitioners are liable for accuracy-related penalties.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

I. The Dental Practice Items

Petitioner husband is a dentist. In 2002 and 2003 he operated his dental practice through an S corporation known as C. Michael Willock, DDS, PA. For tax years 2002 and 2003 respondent determined increases in the dental practice's gross receipts by reference to bank deposits and disallowed or reduced deductions for some of the expenses claimed by the practice. The parties agree that the amounts reported as the dental practice's gross receipts for 2002 and 2003 should be increased by $87,744 and $7,271 respectively. However, what remains in dispute are petitioners' claimed deductions for car and truck expenses, section 179 expenses, travel expenses, professional fees, and cost of janitorial services. These expenses are flow-through items incurred by the S corporation.

## A. Car and Truck Expenses

Respondent denied petitioners' claimed deductions for car and truck expenses of $23,705 and $22,899 for tax years 2002 and 2003, respectively. In 2002 petitioners drove an Audi and a Land Rover, both of which were claimed by petitioners to have been driven solely for business purposes. Petitioner wife had veneers (cosmetic dental applications) applied to her teeth by petitioner husband. Petitioners claim that any time petitioner wife drove anywhere in one of the vehicles she was "a walking, talking billboard for [the] dental office" because of the veneer work petitioner husband had performed. Additionally, each vehicle had a license plate holder that displayed the name of the dental practice. Petitioner husband used the vehicles to perform various tasks for the dental practice, such as purchasing office supplies. During 2002 and 2003, petitioners owned four vehicles: a GMC Envoy, an Audi, a Land Rover, and a Chevy Tahoe. Petitioner wife testified that she drove the Audi until the lease expired,[2] after which she drove the Land Rover.

Petitioners started leasing the Land Rover on May 1, 2002, and the dental practice claimed deductions for lease payments with respect to both the Land Rover and the Audi during 2002. Petitioners leased the Audi until February 10, 2003. During 2002

---

[2]Petitioners leased the Audi and the Land Rover, and owned the GMC Envoy and the Chevy Tahoe.

and 2003 petitioners also reported a $750 monthly expense for "GMAC", which is reflected in their car and truck expenses for 2002 and 2003. It is unclear which vehicle these payments were for. The vehicles were owned or leased by petitioners individually, not by the dental practice; however, the dental practice claimed the deductions.

B. Section 179 Expense Deduction

The dental practice claimed section 179 expense deductions for tax years 2002 and 2003 in the respective amounts of $20,301 and $38,630. Respondent concedes the deduction of $20,301 for tax year 2002. Respondent partially disallowed the section 179 expense deduction for 2003 claimed in regard to the GMC Envoy. On the dental practice's return, petitioners reported that the GMC Envoy was placed in service on November 18, 2003, and that it was used solely for business purposes. Petitioners purchased the GMC Envoy after the lease for the Land Rover expired. Petitioners' lease on the Land Rover ended sometime after 2003, i.e., in 2004. It therefore appears that petitioners retained the Land Rover lease through 2003, and purchased the GMC Envoy after 2003. The GMC Envoy bore a license plate holder with the name of the dental practice. The GMC Envoy was titled in petitioners' names rather than in the name of the dental practice, which claimed the deductions.

C. <u>Travel Expenses</u>

Respondent disallowed travel expenses of $5,082 for 2002, which petitioners claim they incurred during a business trip to Hawaii for a dental conference. Petitioners were in Hawaii from May 3 through 12, 2002. Petitioners testified that the dental conference was held from May 7 through 10, 2002. Petitioners presented the Court an invoice for the purchase of dental equipment which they claim they purchased in Hawaii during the dental conference. The invoice, however, states only when the equipment was purchased, not where it was purchased.

D. <u>Professional Fees</u>

Petitioners deducted professional fees of $10,080.50 for tax year 2002, which amount they claimed was paid to Ron Lewis, the pastor of petitioners' church. Petitioners hired Ron Lewis to instruct petitioner wife in the areas of networking and marketing so that she could be a more effective salesperson and marketer for the dental practice. These instructional sessions purportedly occurred in petitioners' home and, for a brief period of time, over the telephone. Petitioners presented copies of Forms 1096, Annual Summary and Transmittal of U.S. Information Returns, and 1099-MISC, Miscellaneous Income, in support of these claimed expenses for consulting. No Social Security number is listed for Ron Lewis on either form, and no evidence was offered

to confirm that the tax forms were actually delivered to Ron Lewis. Ron Lewis did not testify at trial.

E. Janitorial Expenses

Respondent disallowed some of the dental practice's claimed janitorial expenses for both 2002 and 2003, and a portion of these expenses remains in dispute. With respect to 2002, the dental practice claimed janitorial expenses of $20,226. The only expenses remaining in dispute are certain expenses in connection with payments claimed to have been made to the "Sotelos", a landscaping service, in the amount of $12,208. Petitioners testified that these expenses were reported on their 2002 income tax return and represent expenses incurred for landscaping services provided for the dental practice. All of the invoices from the Sotelos are addressed to petitioners at their home address, and were not addressed to the dental practice or sent to the dental practice address.

In tax year 2003, petitioners deducted janitorial expenses of $11,648, of which amount respondent allowed $4,192. Of the disallowed amount, $1,500 represents an amount petitioners claim to have paid to their son Ryan Willock on behalf of the condominium association where the dental office is located. Petitioners testified that they paid their son to provide landscaping upgrades to the dental practice. Petitioners claim that the landscaping had not been updated in several years, and

that such work was necessary to present a professional appearance to new and existing dental practice patients.  However, petitioners presented no documentation supporting this claimed expense.  The remaining $6,074[3] reflects a payment to Ryan Willock, as evidenced by a Form W-2, Wage and Tax Statement, that petitioners generated.  Petitioners provided no evidence of the services which their son purportedly provided for this amount, nor any evidence that the Form W-2 was delivered to him.

II. Dental Practice Leases

Petitioners owned a condominium which they leased to petitioner husband's dental practice, which was operated as an S corporation.  In both 2002 and 2003, a profit was reported with respect to this rental property.  Petitioners also owned a company known as Dental Equipment Leasing, L.L.C. (DEL), which leased a CEREC milling machine[4] to the dental practice.  DEL did not lease any other equipment to the dental practice, or lease any equipment to any other individual or entity during the years at issue.  In 2002 and 2003, DEL reported a loss.  On their 2002

---

[3]The amount claimed, $11,648, less the amount allowed, $4,192, leaves $7,456 disallowed by respondent.  Respondent, however, disallowed individual amounts of $1,500 and $6,074, which total $7,574.  This amount is $118 more than the total amount claimed by petitioners.  It is unclear what created this discrepancy; however, respondent does not seek to disallow the $118 difference between the total amount reported on the S corporation's return, and the total amount disallowed by respondent.

[4]This machine is used to make dental implants.

and 2003 Federal income tax returns, petitioners deducted losses from the lease of the dental equipment of $13,119 for 2002 and $27,628 for 2003, from the income received from the rental of the condominium.  Respondent disallowed these claimed loss deductions.

III. <u>Nu-E World Lexxus International</u>

During tax years 2002 and 2003, petitioners worked part-time as salespersons and marketers with a company known as Nu-E World Lexxus International (Nu-E World).  Petitioners reported expenses from their work with Nu-E World on Schedule C, Profit or Loss From Business, on their 2002 and 2003 income tax returns.  On their 2002 income tax return, petitioners reported that their work for Nu-E World caused them to incur expenses for travel, meals and entertainment, sales aides, dues, and purchases.  On their 2003 income tax return, petitioners reported that their work for Nu-E World caused them to incur expenses for depreciation and dues.  In the notice, respondent disallowed the expense deductions claimed for both years on grounds that petitioners failed to substantiate the amounts claimed, and failed to establish that the amounts were ordinary and necessary business expenses.  After the notice was issued, petitioners provided some receipts for meals as well as copies of credit card statements.  In light of these disclosures, respondent conceded that petitioners may claim expenses to the extent of income

reported.  Petitioners reported sales income of $1,080 for 2002, and zero income for 2003.  There are no records indicating which items were sold, or the volume or dates of sale.

On their 2002 income tax return, petitioners reported that they incurred expenses in connection with their work for Nu-E World for meals and travel, including hotel rooms for themselves and their son and daughter-in-law, and meals for individuals who, in the Nu-E World structure, ranked both above and below petitioners.  According to their list of expenses, petitioners also purchased two computers to be used in their work for Nu-E World; one from Dell in the amount of $1,497 on April 15, 2002, and the other from Gateway in the amount of $902 in January of 2002.  Petitioners claimed depreciation on their 2002 and 2003 returns for one of these computers, though it is impossible to tell which computer from the evidence available to the Court.  Petitioners also purchased window blinds costing $541 for the meeting room in their home.  Petitioners claim that it was necessary to purchase the blinds to make the meeting room look more professional to potential Nu-E World clients.  Petitioners' records consist of summaries of expenses and receipts for meals with handwritten notes with respect to the individuals whose meals they paid for.

Petitioners thought that Nu-E World would be a good source of income based upon their research of the history of the

individuals running the company.  According to petitioners, these individuals had a proven record of success in very similar industries, and thus petitioners believed that Nu-E World would also be very successful.

Petitioners networked with people and attempted to sell them products that Nu-E World marketed or produced, such as a product called "Noni Juice".  Petitioners often gave out free samples of products provided by Nu-E World, in the hope that the free samples would generate purchases from customers.  Petitioner wife performed the role of salesperson for Nu-E World's products.  She found individuals she believed might be interested in these products, brought the individuals to her home's meeting room, and gave these individuals a sales-pitch on the benefits of various Nu-E World products.

IV. Laurel Valley Properties, L.L.C.

In 2003, petitioners purchased 149 acres of land near Stuart, Virginia for the purpose of starting an organic farm. The property was titled in petitioners' names; however, the farming operation was operated as a limited liability company called Laurel Valley Properties, L.L.C. (Laurel Valley).  Laurel Valley filed a Form 1065, U.S. Return of Partnership Income, for 2003.  Petitioners were each issued a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., from Laurel Valley for 2003.  Petitioners reported on their individual 2003 income

tax return a flowthrough loss from Laurel Valley, of $68,660. Of that amount, $42,684 was for depreciation on two all-terrain vehicles petitioners purchased, and $19,417 was for mortgage interest on the farm. Respondent disallowed the claimed loss on the ground that this endeavor was not entered into as a business activity engaged in for profit.

Laurel Valley had no bank account in 2003, and some of the expenditures for which petitioners claimed deductions were made with checks from petitioner husband's dental practice, while others were made with petitioners' personal checks.

In 2003, petitioners purchased chickens that were to be used for egg production and sale, but the chickens were eaten by predators. Petitioners have since built a chicken coop to house the chickens. Petitioners determined that they would be able to sell the chicken eggs to a nearby restaurant as well as to local individuals. Petitioners devoted all of their weekends, holidays, and vacation time to working on the farm. Petitioners made improvements to the farm such as building a storage shed.

Petitioner wife was born on a farm, and lived on a farm until she was 38 years old. She had owned a farm with her father, and had owned cows, tractors, and milking equipment in the past. Petitioner wife's father was a dairy farmer. Petitioner husband worked on petitioner wife's father's farm after petitioners married. Petitioner husband worked

continuously on the farm until the farm was sold, at which point petitioner husband went to dental school.  Petitioner wife has been a member of the North Carolina Farm Bureau, an independent farming trade group, since 1965.

## V. Banks Deposits (Loan to Ryan Willock)

Respondent analyzed petitioners' bank deposits and determined that petitioners had understated their 2002 and 2003 income of $61,899 and $184,537 respectively.  After respondent issued the notice, petitioners presented respondent with certain documentation in an attempt to justify the understatement.[5] Based upon these documents, respondent conceded all but $8,500 for 2002, and the entire amount for 2003.  Petitioners claim that the bank deposits of $8,500 remaining in dispute for 2002 were received in repayment of a loan they made to their son, Ryan Willock, so that he could purchase a used pickup truck from Michael Hickman, a used car salesman.  Petitioners therefore claim that the bank deposits of $8,500, which respondent included in their income, had a nontaxable source, i.e., loan repayments from their son.  Petitioners' documentary evidence supporting this claim consists of (1) a carbon copy of a check for $7,200 from the bank account of "M. Ryan Willock" dated April 16, 2002, (2) a copy of a deposit slip for petitioners' bank account which

---

[5]The Court is not privy to the reason petitioners did not present this information to respondent before the notice was issued.

reflects a $7,200 deposit on April 17, 2002, and (3) copies of two checks, one for $8,000 and the other for $500, both dated April 16, 2002, and both made payable to Michael Hickman. Petitioners did not present any documentation to support their claim that the additional deposit of $1,300 into their bank account was from their son in satisfaction of his loan debt.

Petitioners lent $8,500 to their son Ryan Willock so that he could purchase a used pickup truck. The truck was offered for sale by Michael Hickman for $8,500. Petitioner wife happened upon the sale of the vehicle and asked her son whether he was interested in purchasing it for the sale price. Her son informed her that he was interested, but could not come to the vehicle's location at that time because of his work schedule. Petitioner wife asked Hickman to hold the vehicle for her son. Hickman agreed to do so only after receiving a $500 deposit check from petitioner wife. Petitioner wife paid the remaining $8,000 to Hickman by check upon sale.

OPINION

I. Dental Practice Items

Respondent determined that the returns underreported the dental practice's gross receipts by reference to bank deposits, and disallowed or reduced some of the deductions claimed by the practice for tax years 2002 and 2003. The parties agree that the dental practice's gross receipts for 2002 and 2003 should be

increased by $87,744 and $7,271, respectively.  However, remaining in dispute are petitioners claimed deductions for car and truck expenses, section 179 expenses, travel expenses, professional fees, and fees for janitorial services.

A. Car and Truck Expenses

Section 162(a) allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including operating expenses of automobiles used in the trade or business.  Sec. 1.162-1(a), Income Tax Regs.  A taxpayer is entitled to deduct transportation expenses incurred in carrying on a trade or business.  Commuting expenses, however, incurred in going from a taxpayer's residence to his or her place of business and returning are nondeductible personal expenses.  See, e.g., Fausner v. Commissioner, 413 U.S. 838 (1973).  When a taxpayer uses a car for personal as well as for business purposes, he or she must allocate expenses between personal and business use.  See sec. 1.274-5T(d)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46025 (Nov. 6, 1985).  Petitioners did not allocate their expenses.

The Code and the regulations thereunder require that sufficient records be maintained to establish the amount of any deduction claimed.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Any taxpayer seeking to deduct expenses related to the business use of a car must provide the Commissioner with certain

information.  A taxpayer must indicate mileage, including total business, commuting, and other personal mileage, percentage of business use, date placed in service, use of other vehicles, after-work use, whether the taxpayer has evidence supporting claimed business use, and whether or not the evidence is written. Sec. 1.274-5T(d)(2)(i), Temporary Income Tax Regs., supra. Petitioners have not provided this information to respondent or the Court.

Section 274(d)(4) provides that no deduction is allowed for listed property as defined by section 280F(d)(4) unless the taxpayer substantiates by adequate records or corroborative evidence (1) the amount of such expense, (2) the time and place of use, (3) the business purpose of the expense, and (4) the business relationship of the taxpayer to the persons using the property.  Pursuant to section 280F(d)(4) listed property includes, with certain exceptions, "any passenger automobile" or "other property used as a means of transportation".  Sec. 280F(d)(4)(A)(i) and (ii).

Petitioners deducted car and truck expenses $23,705 and $22,899 for 2002 and 2003, respectively.  Respondent denied these deductions, claiming that petitioners failed to adequately substantiate the expenses or provide information that the amounts were incurred as ordinary and necessary business expenses.  In order to substantiate the expenses petitioners offered cancelled

checks and credit card bills for various items such as repairs and gas. Additionally, petitioners offered a series of handwritten calendars that detail their daily work schedules, but not the particular use of the vehicles for which expenses were claimed. Petitioners used their cars for personal as well as business purposes; however, petitioners claim all use was business related because each vehicle had a license plate holder that displayed the name of the dental practice. Petitioners contend that even when the vehicles were being used for personal reasons they provided a valuable advertising service to the dental practice. Petitioners did not maintain records allocating personal and business use of their cars. Petitioners also commuted to the dental practice from their home daily, but did not make an allocation for any commuting to and from the dental practice.

Petitioners failed to prove that the vehicles were used in the conduct of a trade or business as defined under section 162. Further, petitioners failed to maintain adequate records to substantiate the use of their vehicles under section 274. Respondent's determination is sustained.

B. <u>Section 179 Expense Deductions</u>

A taxpayer may elect to deduct as a current expense the cost of any section 179 property, with certain dollar limitations, that is acquired by purchase in the active conduct of a trade or

business and placed in service during the taxable year. Sec. 179(a), (b), (d)(1); sec. 1.179-4(a), Income Tax Regs. Placed in service is defined to mean "the time that property is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity." Sec. 1.179-4(e), Income Tax Regs.

The dental practice claimed section 179 deductions for tax years 2002 and 2003 of $20,301 and $38,630, respectively. Respondent concedes petitioners may deduct $20,301 for tax year 2002. However, respondent disallowed the section 179 deduction claimed in 2003 for the GMC Envoy petitioners claim was used solely for business purposes for the dental practice. On the dental practice's return, petitioners reported that the GMC Envoy was placed in service on November 18, 2003, and that it was used solely for business purposes. Petitioner wife testified that petitioners purchased the GMC Envoy after the lease for the Land Rover expired. However, petitioner wife also testified that petitioners' lease on the Land Rover ended sometime after 2003. It therefore appears that petitioners retained the Land Rover lease through 2003 and thus purchased the GMC Envoy after 2003.

It is unclear whether petitioners placed the item in service in 2003 or in 2004 after the lease on the Land Rover expired.

Petitioners have not offered any other evidence to corroborate their claimed placed-in-service date. Under section 179 and the regulations thereunder, the Court must sustain respondent's determination as to the GMC Envoy.

C. Travel and Entertainment Expenses

A taxpayer may claim a deduction for travel and entertainment expenses if the taxpayer establishes, among other things, that the expenditure was directly related to the active conduct of the taxpayer's trade or business or, in the case of an expenditure directly preceding or following a substantial and bona fide business discussion, that the expenditure was associated with the active conduct of the taxpayer's trade or business. Sec. 1.274-2(a)(1), Income Tax Regs. Petitioners claimed travel expenses of $10,196 for tax year 2002, of which $5,082 remains in dispute after respondent's partial concession. Petitioners claim they incurred these expenses for a trip to Hawaii for a dental seminar. Petitioners have not offered any probative evidence to substantiate their attendance at the seminar, nor have they offered any probative evidence to support the business purpose of the trip. Petitioners presented the Court an invoice for the purchase of dental equipment which they claim was made in Hawaii during the dental conference. The invoice, however, states only when the equipment was purchased, not where it was purchased. Petitioners produced no evidence

supporting any of the expenses claimed, which include meals, first-class airline tickets, and taxi fees.  Petitioners have failed to substantiate that their claimed expenses were in any way related to their dental practice.

Respondent's determination is sustained as to the amount of the travel expenses remaining in dispute and not conceded by respondent.

D. Professional Fees Expense

Petitioners claimed a deduction for professional fees for tax year 2002 of $10,080.50, which they claimed was paid to Ron Lewis for consulting services in the form of networking and marketing instruction to petitioner wife.  Petitioners presented to the Court copies of Forms 1096 and 1099-MISC, which petitioners prepared, in support of these claimed expenses for consulting.  No Social Security number is listed for Ron Lewis on either form, nor is there any proof that these forms were ever delivered to him.  Petitioner wife initially testified that she borrowed the money used to pay Ron Lewis by issuing to him checks written against a Chase line of credit, thus incurring finance charges.  She later testified that she paid Ron Lewis with "mostly cash".  It is unclear from the evidence whether Ron Lewis was ever paid any amount by petitioners.

Because petitioners have not met their burden of substantiating these expenditures, respondent's determination must be sustained.

E. Janitorial Services Expense

Respondent reduced the dental practice's claimed janitorial expenses for both 2002 and 2003, and a portion of these expenses remains in dispute. With respect to 2002, the dental practice claimed janitorial expenses of $20,226. The only expenses remaining in dispute are certain expenses of $12,208 in connection with payments claimed to have been made to the "Sotelos", a landscaping service. Petitioners testified that these expenses were reported on their 2002 income tax return, and represented expenses incurred for landscaping services provided to the dental practice. All of the invoices from the Sotelos were addressed to petitioners at their home address, and were not addressed to the dental practice, or sent to the dental practice address.

With respect to tax year 2003, petitioners claimed janitorial expenses of $11,648, of which respondent allowed $4,192. Of the disallowed amount, $1,500 represents an amount petitioners claim to have paid to their son Ryan Willock on behalf of the condominium association where the dental office is located. Petitioners testified that they paid their son to provide landscaping upgrades to the dental practice. Petitioners

claim that the landscaping had not been updated in several years, and that such work was necessary to present a professional appearance to new and existing dental practice patients. However, petitioners presented no documentation supporting this claimed expense. The remaining $6,074 reflects a payment to Ryan Willock, as evidenced by a Form W-2 petitioners generated. Petitioners provided no evidence of the services which their son purportedly provided for this amount.

Petitioners have failed to substantiate that these claimed expenses had a business purpose or that the services were even provided to their business, rather than to them personally. Respondent's determination is sustained.

II. Dental Practice Leases

DEL leased one CEREC milling machine to the dental practice, but did not lease any other equipment to any other individual or entity during the years at issue. DEL reported losses for 2002 and 2003. Petitioners, on their 2002 and 2003 income tax returns, attempted to deduct the passive losses of DEL from the income derived from their rental of the condominium to the dental practice, claiming both were passive activities. Respondent disallowed the deduction on the grounds that the rental activity was not passive because petitioner husband actively participated in the dental practice. Petitioners argued during the trial that the equipment leasing and condominium leasing were both

nonpassive activities, thus allowing for the loss of one to offset the income of the other.

Generally, under section 469, an individual, closely held C corporation, or personal services corporation may not deduct losses from passive activities against nonpassive income. Passive activity is defined to include (1) a trade or business in which the taxpayer is not a material participant or, (2) any rental activity. See sec. 469(c). Though section 469(c)(2) generally includes rental activities in the definition of passive activity, the "self-rental rule" provides that a taxpayer's net income from a rental of property to a trade or business activity in which the taxpayer materially participates is treated as nonpassive income, whereas a loss from such rental is treated as a passive loss. See sec. 1.469-2(f)(6), Income Tax Regs.; see also Krukowski v. Commissioner, 114 T.C. 366, 369 (2000) (holding that the Secretary was authorized to prescribe section 1.469-2(f)(6), Income Tax Regs., and that the regulation is valid law), affd. 279 F.3d 547 (7th Cir. 2002). Therefore, if petitioner husband's dental practice constitutes a trade or business activity in which he materially participates, under the self-rental rule any income from the condominium rental or equipment rental would be nonpassive and any losses from these activities would be treated as passive. If this is the case, then respondent's determination would be sustained because losses

from one passive activity can be deducted against income from other passive activities, but passive losses may not be deducted from nonpassive income. See sec. 469(a).

An individual participates materially in a trade or business if his or her involvement "in the operations of the activity" is "regular", "continuous", and "substantial". Sec. 469(h)(1). In an effort to make the material participation test objective, the regulations identify seven situations in which an individual's participation in a trade or business is material. See sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). Fulfilling the criteria in any of the seven will cause the participation to be deemed active. Id. Petitioner husband may meet the criteria for several of the situations, but most notably meets the "500 hour test". Under this test an individual who participates in an activity for more than 500 hours during a taxable year is a material participant in the activity for the year. Id. "Participation" generally means any work done in an activity by an individual who owns an interest in the activity. Sec. 1.469-5(f)(1), Income Tax Regs. Generally, all hours of work in connection with the activity are counted as participation. Id.

Petitioner husband worked full-time at the dental practice during 2002 and 2003. By petitioner husband's own admission he worked more than 500 hours at the dental practice each year. The

dental practice was clearly materially participated in by petitioner husband during 2002 and 2003. Under the self-rental property rule, the income petitioners received from the rental of the condominium is nonpassive income. Moreover, under this rule, the losses petitioners may have incurred from the rental of the CEREC machine to the dental practice are passive.

Under section 469, petitioners are prohibited from deducting the passive losses of DEL from the nonpassive income of the condominium rental. The Court sustains respondent's determination.

## III. Section 183 and Activities Engaged in for Profit

The Court must determine whether petitioners' Nu-E World sales and marketing activities and Laurel Valley farming activities were "engaged in for profit" within the meaning of section 183. Section 183(a) provides that if an activity engaged in by an individual is not engaged in for profit, no deduction attributable to that activity shall be allowed except as provided in section 183(b). Section 183(b) allows in the case of activities not engaged in for profit: (1) Deductions which would be allowable under the Code without regard to whether such activity was engaged in for profit; and (2) a deduction equal to the amount of the deductions which would be allowable under the Code only if such activity were engaged in for profit, but "only to the extent that the gross income derived from such activity

for the taxable year exceeds the deductions allowable by reason of [the first exception]".  Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on any trade or business.  Section 212 allows a deduction for all ordinary and necessary expenses paid or incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.  Whether deductions are allowable under section 162 or 212 depends, inter alia, on whether the taxpayer engaged in the activity with the objective of making a profit.  See sec. 183(a).

The regulations under section 183 establish an objective test for determining whether a taxpayer is engaging in an activity for profit.  The regulations state:

> The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit. * * *  In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent.

Sec. 1.183-2(a), Income Tax Regs.  The regulations provide a nonexclusive list of nine factors that "should normally be taken into account" when making the determination whether the activity was engaged in for profit.  Sec. 1.183-2(b), Income Tax Regs. The nine factors are:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort spent by the taxpayer on the activity; (4) the expectation that assets used in the activity might appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the taxpayer's record of income or losses attributable to the activity; (7) the amount of profits earned; (8) the taxpayer's financial status; and (9) the personal pleasure or recreation derived from the activity by the taxpayer.  Id.

As explained by the regulations, no single factor is controlling.  Sec. 1.183-2(b), Income Tax Regs.  To simplify the analysis, several factors can be grouped together for purposes of analyzing the facts and circumstances applicable to this case.

The first factor involving whether the taxpayer acted in a businesslike manner in connection with the undertaking is defined under section 1.183-2(b)(1), Income Tax Regs., as follows:

> The fact that the taxpayer carries on the
> activity in a businesslike manner and maintains
> complete and accurate books and records may
> indicate that the activity is engaged in for
> profit. Similarly, where an activity is carried
> on in a manner substantially similar to other

activities of the same nature which are profitable, a profit motive may be indicated. A change of operating methods, adoption of new techniques or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive.

Section 1.183-2(b)(2), Income Tax Regs., explains the second factor regarding the expertise of the taxpayer and his advisors:

Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices. Where a taxpayer has such preparation or procures such expert advice, but does not carry on the activity in accordance with such practices, a lack of intent to derive profit may be indicated unless it appears that the taxpayer is attempting to develop new or superior techniques which may result in profits from the activity.

The time and effort expended by the taxpayer in carrying on the activity, which is the third factor, is defined by section 1.183-2(b)(3), Income Tax Regs., as follows:

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit. The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity.

With respect to the fifth factor dealing with the success of the taxpayer in carrying on other similar or dissimilar activities, section 1.183-2(b)(5), Income Tax Regs., provides:

> The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable.

A. Nu-E World

The Court is not convinced that petitioners conducted this activity in a businesslike manner. See sec. 1.183-2(b)(1), Income Tax Regs. Petitioners purchased two computers supposedly for use in this activity; however, there is no evidence before the Court of what purpose these computers served. Additionally, petitioners' records consist of summaries of expenses and receipts for meals with handwritten notes with respect to the individuals whose meals they paid. Petitioners claim that they served as salespersons for Nu-E World. Nu-E World sells consumer products such as "Noni Juice". Petitioners claim that they did in fact sell some Nu-E World products. Petitioners, however, did not maintain any records indicating which, if any, items they sold on behalf of Nu-E World or the volume or dates of such sales. Petitioners similarly did not use certain fundamental business practices that would be expected of individuals undertaking an activity for profit, such as keeping detailed

records of business telephone charges, commercial bank account records, detailed invoices of products received from Nu-E World, and postage expenses records.  See Ogden v. Commissioner, T.C. Memo. 1999-397, affd. 244 F.3d 970 (5th Cir. 2001).  To the Court's knowledge, petitioners did not maintain a written business plan or a projected profit and loss statement. Petitioners have no prior experience in selling or maintaining an inventory of retail products.

The Court determines that petitioners are not entitled to deduct the losses from their Nu-E World activity for the years at issue.

B. Laurel Valley

Petitioners purchased a parcel of land in Virginia with the goal of transforming it into an organic farm.  Petitioners operated the farm in a businesslike manner consistent with that of farms being operated for profit.  See sec. 1.183-2(b)(1), Income Tax Regs.  To this end, petitioners made improvements to the land, such as building a storage shed, purchasing farming machinery to clear and work the land, and building a chicken coop.  Petitioners purchased chickens that were to be used for egg production and sale.  Through research, petitioners determined that the eggs could be sold to a nearby winery and restaurant, as well as to other local consumers.  These are activities conducted in any successful farming activity.

Petitioners devoted all of their weekends, holidays, and vacation time to working on the farm. See sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner wife was born on a farm and lived on a farm until she was 38 years old. She had at one time owned a profitable farm with her father and had also owned livestock and farming equipment. Petitioner husband worked on petitioner wife's father's farm after petitioners were married. Petitioner husband worked continuously on that farm until the farm was sold. Petitioner wife has been a member of the North Carolina Farm Bureau since 1965. See sec. 1.183-2(b)(5), Income Tax Regs.

It is important to note that the year at issue, 2003, was the very first year petitioners engaged in this activity. This fact makes the determination whether the activity was engaged in for profit more difficult. Though petitioners' recordkeeping certainly could be improved, and no profit was made, by all indications petitioners were working hard to make this a successful farm from which goods could be sold to local restaurants and individuals.

The Court determines that petitioners engaged in the farming activity with the motivation of making a profit and are entitled to the claimed deductions.

IV. Loan to Ryan Willock

Section 61(a) specifies that "Except as otherwise provided", gross income includes "all income from whatever source derived". Respondent used the bank deposits method of proof to reconstruct petitioners' income and determined that unexplained deposits totaling $8,500 should be included as income. "Deposits in a taxpayer's bank account are prima facie evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source." Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), affg. T.C. Memo. 1998-121. "The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge." Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (citing DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992)).

Petitioners claim that the $8,500 deposited in their bank account for 2002 is not income but instead the repayment of a loan made to their son, Ryan Willock, so that he could purchase a used pickup truck. Petitioners further claim that the $8,500 comprises two deposits; one of $7,200, and the other of $1,300. In support of their claim that the deposited amounts were loan repayments and not income, petitioners submitted to the Court (1)

a carbon copy of a check for $7,200 from the bank account of "M. Ryan Willock" dated April 16, 2002, (2) a copy of a deposit slip for petitioners' bank account which reflects a $7,200 deposit on April 17, 2002, and (3) copies of two checks, one for $8,000 and the other for $500, both dated April 16, 2002, and both made payable to Michael Hickman, a used car salesman. Petitioners did not present any documentation to support their claim that the additional deposit of $1,300 into their bank account was from their son in satisfaction of his loan debt. Instead, petitioners presented copies of two statements from a Charles Schwab custodial account for Michael R. Willock which do not seem to address this deposit at all.

Petitioner wife testified that she lent $8,500 to her son Ryan Willock so that he could purchase a used pickup truck. The truck was offered for sale by Michael Hickman for $8,500. Petitioner wife testified that she happened upon the sale of the vehicle and asked her son whether he was interested in purchasing it for the sale price. Her son informed her that he was interested but could not come to the vehicle's location at that time because of his work schedule. Petitioner wife asked Hickman to hold the vehicle for her son. Hickman agreed to do so only after receiving a check for $500 as a deposit from petitioner wife. Petitioner wife testified that the remaining $8,000 was paid to Michael Hickman by check upon sale.

Petitioners claim that the deposits of $7,200 and $1,300 were from their son in repayment of the loan. Petitioners claim that Ryan Willock asked to repay the loan in two separate installments because he could not afford to immediately pay the loan principal in its entirety.

The Court finds petitioners' explanation of this matter to be credible. Petitioners offered to the Court a carbon copy of a check for $7,200 from the bank account of "M. Ryan Willock" dated April 16, 2002. This amount appears to be contemporaneous with petitioners' April 17, 2002, deposit slip in the amount of $7,200. Petitioners argue that their son paid the balance of the loan on November 3, 2002. Petitioners' banking records reflect a deposit to their account made on November 3, 2002, in the amount of $1,300.

The Court determines that the two deposits at issue were loan repayments made by petitioners' son, and are not includable as income.

V. <u>Accuracy-Related Penalty</u>

Respondent determined that petitioners are liable for each of their taxable years for the accuracy-related penalty under section 6662(a) because of: (1) Negligence or disregard of rules or regulations under section 6662(b)(1); or (2) a substantial understatement of tax under section 6662(b)(2).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of income tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. See sec. 6662(c). Negligence has also been defined as a failure to do what a reasonable and prudent person would do under the circumstances. See Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). The regulations further state that negligence is strongly indicated where there is a tax treatment of an item that a reasonable and prudent person would find "too good to be true" under the circumstances. Sec. 1.6662-3(b)(1)(ii), Income Tax Regs. "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

An understatement of income tax exists if the actual tax exceeds the tax reported on the return, sec. 6662(d)(2)(A), and

an understatement will be treated as substantial in the case of an individual if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return, sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's effort to assess the proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To meet that burden, respondent must come forward with sufficient evidence showing that it is appropriate to impose the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Although respondent bears the burden of production with respect to the accuracy-related penalty that respondent determined for each of petitioners' taxable years, respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions[,] * * *

[because] the taxpayer bears the burden of proof with regard to those issues." Id.

The parties made substantial concessions prior to the start of trial, and the Court did not sustain some of the items in the notice of deficiency. The Court finds that in the event the computations under Rule 155 establish that there is an understatement of income tax as a result of the Court's holding and the parties' concessions that is greater than 10 percent of the tax required to be shown in petitioners' joint returns or $5,000, see sec. 6662(d)(1)(A), then petitioners have substantially understated their income tax and are liable for such penalty under section 6662(d).

Petitioners were negligent in their treatment of the remaining items in the notice of deficiency that the Court sustained, as described below. Generally, the Court finds that petitioners failed to show that they (1) made a reasonable attempt to comply with, and did not intentionally disregard, the Code and the regulations thereunder, and (2) acted with due care and did what reasonable people would do under the circumstances.[6]

---

[6]For example, petitioners' claimed deductions for the dental practice items, i.e., the license plate advertisements, are reminiscent of those claimed by the taxpayer in Henry v. Commissioner, 36 T.C. 879 (1961), which treatment was similarly "too good to be true". See sec. 1.6662-3(b)(1)(ii), Income Tax Regs. In Henry, the taxpayer, a tax lawyer and accountant, allocated 100 percent of expenses incurred in maintaining his yacht as a business deduction on his Federal income tax return.
(continued...)

### 1. Car and Truck Expenses

The crux of petitioners' argument is that all use of their vehicles, whether otherwise personal or not, may be claimed as business use because of the license plate holders on each vehicle that advertise the dental practice. Petitioners have offered no authority to support this position, nor could the Court find any supportive law. The idea that a license plate holder somehow transforms all personal use into business use is clearly "too good to be true".

### 2. Section 179 Expense

Petitioners failed to substantiate that the GMC Envoy was purchased and placed in service in 2003, the year for which the expense deduction was claimed under section 179. Petitioners are negligent in failing to keep adequate books and records to substantiate this deduction. See sec. 1.6662-3(b)(1), Income Tax Regs.

### 3. Travel Expenses

Petitioners failed to provide any probative evidence to the Court that their trip to Hawaii related to petitioner husband's dental practice or otherwise served a business purpose.

---

[6](...continued)
The taxpayer purchased a yacht on which he flew a pennant with the numerals "1040" on it, purportedly to provoke inquiries and thus promote his business by giving him contacts with people in yachting circles who might become clients. The Commissioner disallowed the deduction, and the Court upheld the Commissioner's determination.

### 4. Professional Fees Expenses

Petitioners failed to substantiate that the amount claimed as an expense was a legitimate business expense or was ever paid.

### 5. Janitorial Services

Petitioners failed to substantiate that these claimed expenses had a business purpose or that the services were even provided to their business, rather than to them personally.

### 6. Nu-E World

Petitioners failed to substantiate that the amounts deducted as expenses were legitimate business expenses.

Petitioners maintain that they are not liable for any penalties under section 6662(a) and (b)(1) because they had reasonable cause for, and acted in good faith in taking, their reported positions because they relied on the advice of their tax preparer.

The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good-faith reliance on the advice of a professional, such as an accountant. See id. "[A]n honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge and education

of the taxpayer" may indicate reasonable cause and good faith. See id.

The Court sustained respondent's determination regarding the dental leasing equipment largely because of the "self-rental rule". See sec. 1.469-2(f)(6), Income Tax Regs. This rule is complex and could very easily perplex even a sophisticated taxpayer. The Court does not find petitioners' treatment of both leasing activities as passive for income and loss to be "too good to be true". The Court finds that under section 6662(c) petitioners did make "a reasonable attempt to comply with the provisions of [the Code]". Petitioners were not negligent in their reporting of this item and have met the reasonable cause exception for the portion of the underpayment relating to this item. See sec. 6664(c)(1).

Petitioners have failed to carry their burden of establishing that they acted with reasonable cause and in good faith on all the other items sustained by the Court. Petitioners have failed to provide the Court with any evidence that they received advice from a tax preparer or that they followed such advice. Petitioners have fallen short of convincing the Court that they are entitled to relief under section 6664(c).

Accordingly, with the exception of the dental equipment leasing item, petitioners are liable for a 20-percent

accuracy-related penalty on underpayments relating to the notice of deficiency items that the Court sustained.

<u>Conclusion</u>

In reaching the conclusions stated herein, the Court has considered all arguments made, and, to the extent not mentioned above, finds them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u> <u>under Rule 155</u>.