T.C. Memo. 2014-219

UNITED STATES TAX COURT

R. JEAN FISHER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18291-12.                    Filed October 16, 2014.

R. Jean Fisher, pro se.

John R. Bampfield, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge:  Respondent determined the following deficiencies and additions to tax with respect to petitioner's Federal income tax for tax years 2002 through 2010:

| [*2] | | Additions to tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|------|------|------|
| 2002 | $143,852 | $32,066 | $35,629 | $4,758 |
| 2003 | 16,176 | 3,390 | 3,767 | 386 |
| 2004 | 20,678 | 4,396 | 4,885 | 556 |
| 2005 | 25,979 | 5,554 | 6,171 | 984 |
| 2006 | 50,788 | 11,290 | 12,545 | 2,371 |
| 2007 | 14,012 | 3,153 | ([1]) | 38 |
| 2008 | 19,234 | 4,328 | ([1]) | 618 |
| 2009 | 16,605 | 3,736 | ([1]) | 398 |
| 2010 | 12,080 | 2,718 | ([1]) | 259 |

[1]The sec. 6651(a)(2) addition to tax for 2007 through 2010 had not yet reached the 25% maximum as of the mailing date of the notice of deficiency.

Unless otherwise indicated, all section reference are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

After concessions the issues for consideration are whether amounts paid to petitioner by the Richard W. Quisling, M.D., P.C. (Quisling), in tax years 2003 through 2010 are includible in gross income and whether petitioner is liable for additions to tax pursuant to sections 6651(a)(1) and (2) and 6654.

[*3]                      FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  Petitioner resided in Tennessee when she filed her petition.

Petitioner did not file income tax returns for tax years 2002 through 2010. Pursuant to section 6020(b) respondent prepared and signed substitutes for returns for tax years 2002 through 2010.

Richard W. Quisling is the sole shareholder of Quisling through which Dr. Quisling operated a medical practice.  Quisling paid petitioner the following amounts for the tax years in issue:

| Year | Payment |
|------|---------|
| 2002 | -0- |
| 2003 | $24,753 |
| 2004 | 46,595 |
| 2005 | 37,500 |
| 2006 | 48,000 |
| 2007 | 48,000 |
| 2008 | 55,000 |
| 2009 | 56,190 |
| 2010 | 49,836 |

**[*4]** Quisling did not issue petitioner a Form 1099-MISC, Miscellaneous Income for amounts paid in any year 2003 through 2010. Dr. Quisling's wife, Pamela Quisling, has been the bookkeeper for Quisling since 1977.

Beginning in 2003 petitioner received payments from Quisling. The payments were in the form of checks, and the date of the first check was March 15, 2003. From March 2003 through December 2010 Quisling made monthly payments to petitioner.

Petitioner sent Dr. Quisling a memorandum entitled "Memorandum of Understanding on Loan Terms and Conditions". This memorandum states:

> It has been revealed to me that the action of Blue Cross Blue Shield of Tennessee, Inc., * * * has created a financial burden upon your medical practice, because the medical services rendered by your medical practice rely upon payment(s) received by BCBST. Therefore, I am willing to develop a loan package * * * for the short-range and long-range impact upon the delivery of medical services by the "in-network-provider" as well as the "out-of-network provider" * * *.

The memorandum further states "[a] reasonable expectation of this Memorandum of Understanding on Loan Terms and Conditions is that the loan proceedings will be based upon a) your ability to loan and b) the completion of the research which will result in profit to the undersigned in order that the loan can be repaid."[1]

---

[1]The term "undersigned" refers to petitioner.

**[\*5]** This memorandum, dated April 1, 2003, includes the signature of petitioner but not the signature of Dr. Quisling. Petitioner sent Dr. Quisling a followup letter to the memorandum requesting a memorandum of acceptance. The memorandum of acceptance includes a signature alleged to be Dr. Quisling's, but this signature is not his.

Petitioner did not make payments to Dr. Quisling. Neither Dr. Quisling nor Mrs. Quisling demanded payment from petitioner.

On February 5, 2011, petitioner faxed Dr. Quisling a letter referencing an alleged purchase of medical equipment that Quisling made from petitioner's deceased husband. On February 25, 2011, Dr. Quisling's attorney and the attorney for Quisling, Vincent Zuccaro, sent petitioner a letter stating that Quisling had not purchased any equipment from her husband or received a gift of property from her or her husband. That same day Dr. Quisling also sent petitioner a letter stating that he would no longer see her as a patient. Petitioner faxed an additional letter to Dr. Quisling on February 28, 2011. Mr. Zuccaro sent petitioner a letter in response and reiterated that petitioner should not contact Dr. Quisling and Mrs. Quisling.

**[*6]** Petitioner faxed letters to Mr. Zuccaro on February 28, March 1, 2, 10, 14, and 25, and April 11, 2011. In these letters, petitioner appeared to be trying to reach some type of settlement with Quisling.

Petitioner for the years at issue made estimated income tax payments or had tax withheld in the following amounts:

| Year | Amount |
|------|--------|
| 2002 | $1,336 |
| 2003 | 1,107 |
| 2004 | 1,138 |
| 2005 | 1,293 |
| 2006 | 608 |
| 2007 | -0- |
| 2008 | -0- |
| 2009 | -0- |
| 2010 | -0- |

Respondent concedes that petitioner is not liable for an addition to tax pursuant to section 6654 for tax year 2002.

## OPINION

Petitioner has the burden of proving that respondent's determination that the amounts in issue are includible in gross income as compensation for services is wrong. See Rule 142(a); Welch v. Helvering, 290 U.S. 111,115 (1933). Petitioner

**[*7]** has not claimed or shown that she meets the requirements of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue. The Commissioner bears the initial burden of producing at least minimal evidence linking the taxpayer to the tax-generating activity or the receipt of funds before the general presumption of correctness attaches to a determination of unreported income. United States v. Walton, 909 F.2d 915, 919 (6th Cir. 2007). Once the Commissioner meets the burden of production on this issue, the burden of persuasion shifts to the taxpayer to produce credible evidence that he or she did not earn the alleged income or of proving that the Commissioner's deficiency calculations were not grounded on a minimal evidentiary foundation. Id.

Respondent's determinations in the notices of deficiency are based in substantive evidence linking petitioner with the income at issue. Included among the stipulated exhibits were 2004 and 2005 canceled checks of payments to petitioner. We are satisfied that respondent has carried his burden with respect to the unreported additional income.

I.    Income Received From Quisling

Compensation for services is included in gross income. Sec. 61(a)(1). Money received pursuant to a loan is not included in gross income because there is an obligation to repay. See Commissioner v. Tufts, 461 U.S. 300, 307 (1983). A

[*8] bona fide loan requires both parties to have an actual, good-faith intent to establish a debtor-creditor relationship when the funds are advanced. Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970). An intent to establish a debtor-creditor relationship exists if the debtor intends to repay the loan and the creditor intends to enforce the repayment. Beaver v. Commissioner, 55. T.C. 85, 91 (1970); Fisher v. Commissioner, 54 T.C. at 909-910.

Courts consider various factors to determine whether parties intended a bona fide loan; no single factor is dispositive. See Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), aff'g T.C. Memo. 1998-121; Frierdich v. Commissioner, 925 F.2d 180, 182 (7th Cir. 1991), aff'g T.C. Memo. 1989-393; Kaider v. Commissioner, T.C. Memo. 2011-174, slip op. at 15-16. We examine the following factors to determine whether payments to petitioner were loans:

(1) the ability of the borrower to repay;

(2) the existence or nonexistence of a debt instrument;

(3) security, interest, a fixed repayment debt, and a repayment schedule;

(4) how the parties' records and conduct reflect the transaction;

(5) whether the borrower has made repayments;

(6) whether the lender had demanded repayment;

**[*9]** (7) the likelihood that the loan was disguised compensation for services; and

(8) the testimony of the purported borrower and lender.

See Welch v. Commissioner, 204 F.3d at 1230; Kaider v. Commissioner, T.C. Memo. 2011-174.

### A. The Ability of the Borrower To Repay

If the parties did not intend that the funds be repaid after they were advanced, it suggests that the parties did not intend a bona fide loan. See Commissioner v. Makransky, 321 F.2d 598, 600 (3d Cir. 1963), aff'g 36 T.C. 446 (1961). Courts assess the ability to repay by whether there was "a reasonable expectation of repayment in light of the economic realities of the situation." Fisher v. Commissioner, 54 T.C. at 910.

Petitioner contends that payments made by Quisling were loans. Petitioner testified that she needed the money to fund the research for a book that she was writing. However, petitioner produced no evidence of the book including the potential for publishing the book or any other evidence of her ability to repay. Dr. Quisling testified that the payments were not loans and that he did not expect to be repaid.

**[*10]** B.  The Existence or Nonexistence of a Debt Instrument

There is a memorandum dated April 1, 2003, entitled "Memorandum of Understanding on Loan Terms and Conditions" which discusses terms of the alleged loans.  This memorandum is signed by petitioner.  There is a memorandum entitled "Memorandum of Acceptance" which is not dated and which includes a signature for Dr. Quisling.  Both Dr. Quisling and Mrs. Quisling testified that the signature on the "Memorandum of Acceptance" is not his signature.  Dr. Quisling testified that he had never seen the document before respondent's counsel showed it to him.

C.  Security, Interest, a Fixed Repayment Date, and a Repayment Schedule

The memorandum outlining the terms of the alleged loan states:

This Creative Reversal Installment Loan is based upon a 1.5% interest and/or the fed rate as dictated by the Federal Reserve Board, Washington, D.C. and therefore, activated whenever the interest rate @1.5% and/or the fed rate is lower.  Payback of the loan is predicated upon the completion of topics within the medical science research and only activated upon any completion a research project in which a revenue stream is created.

There is no fixed repayment date or schedule.  The provisions do not show the intent to establish bona fide loans.  Furthermore, these provisions are in a document signed only by petitioner.  Dr. Quisling testified that he had not seen the

**[*11]** memorandum of understanding until respondent's counsel showed him the document.

### D. How the Parties' Records and Conduct Reflect the Transaction

Petitioner testified that the payments were loans for a book, but there was no evidence to support this contention. Petitioner's records of loans were not credible. Petitioner did not submit a loan agreement signed by Dr. Quisling. Dr. Quisling and Mrs. Quisling were credible witnesses. They contended the payments were for services petitioner performed related to patient billing and other financial aspects of medical practice. Quisling did not issue petitioner Forms 1099-MISC. However, Quisling had no documentation to support loans to petitioner.

### E. Whether the Borrower Has Made Repayment

If the borrower has made repayment, it suggests that the parties intended a bona fide loan. Welch v. Commissioner, 204 F.3d at 1231. Petitioner had not made any payments.

### F. Whether the Lender Has Demanded Repayment

A demand for repayment suggests that the parties intend a bona fide loan. See Estate of Rosen v. Commissioner, T.C. Memo. 2006-115. Quisling has not demanded repayment.

**[\*12]** G. <u>The Likelihood That the Loans Were Disguised Compensation for Services</u>

Petitioner contends that the payments were loans to finance the cost of research for her book. Dr. Quisling and Mrs. Quisling provided credible testimony that the payments were made for services. The memorandum describing the alleged loans discusses the development of a microeconomic and macroeconomic model that will impact the short-range and long-range delivery of medical services.

Dr. Quisling and Mrs. Quisling testified that petitioner assisted with a Blue Cross Blue Shield audit, billing issues, and lease agreements. Dr. Quisling testified that petitioner was "discharged" in February 2011 because she asked for documentation to buy equipment from her and she refused to provide information such as her full name and Social Security number. Petitioner contends that she must be "magical" if she was able to perform the services described by Dr. Quisling and Mrs. Quisling.

H. <u>Testimony of the Purported Borrower and Lender</u>

Petitioner testified the payments were loans, but she had no credible supporting documentation. Petitioner testified that she sent Dr. Quisling a letter dated April 1, 2003, providing guidance for the audit with Blue Cross Blue Shield.

**[\*13]** Petitioner testified that the Internal Revenue Service audited Quisling's returns in 2010 and not until then was there a request for her to fill out a Form W-9, Request for Taxpayer Identification Number and Certification.

Dr. Quisling and Mrs. Quisling testified the payments were for services, and they provided credible testimony. Dr. Quisling testified that petitioner was paid $10,000 in 2003 to assist with Blue Cross Blue Shield of Tennessee. He further testified that after the successful outcome of the audit, petitioner resolved other insurance disputes, assisted with credentialing committees, produced ideas for advertising and business development, negotiated a dispute with Summit Hospital, resolved a dispute with a new landlord, and confronted Humana Insurance in Lexington, Kentucky. Mrs. Quisling testified that petitioner was paid $3,000 a month for her services and the payments increased to $4,000 a month.

Dr. Quisling testified that he asked petitioner to provide her Social Security number in late 2010 and she refused. Dr. Quisling stopped paying petitioner in December of 2010. On February 18, 2011, Dr. Quisling terminated petitioner as a patient.

Dr. Quisling and Mrs. Quisling testified that Quisling did not purchase any equipment from petitioner's deceased husband and that petitioner requested information about the alleged purchases in February of 2011.

**[*14]** Petitioner testified that she received loans from Dr. Quisling to write a book. Her testimony was inconsistent and she submitted a letter referencing that Dr. Quisling purchased equipment from her deceased husband.

II.     Conclusion

We conclude that the payments Quisling made to petitioner in tax years 2003 through 2010 are included in petitioner's gross income as compensation for services. There is no evidence of an actual, good-faith intent to establish a debtor-credit relationship. Dr. Quisling did not have a good-faith intent to enter a loan agreement.

III.    Additions to Tax

A.      Section 6651(a)(1)

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless the taxpayer proves that such failure is due to reasonable cause and is not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985); Harris v. Commissioner, T.C. Memo. 1998-332. The parties stipulated that petitioner did not file income tax returns for tax years 2002 through 2010. This stipulation is sufficient to satisfy respondent's burden of production under section 7491(c). Petitioner did not show reasonable cause for her failure to

[*15] file tax returns. Therefore, petitioner is liable for the addition to tax under section 6651(a) for each of those years.

 B. <u>Section 6651(a)(2)</u>

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount shown on a return. In a case such as this where the taxpayer did not timely file returns for the tax years at issue, the Commissioner must introduce evidence that a valid substitute for return was made pursuant to section 6020(b). Sec. 6651(g)(2). The parties stipulated that substitutes for returns were prepared in accordance with section 6020(b). Petitioner did not show reasonable cause for her failure to file tax returns.

We hold that petitioner is liable for the addition to tax under 6651(a)(2) for each of tax years 2002 through 2010.

 C. <u>Section 6654</u>

Section 6654 imposes an addition to tax on an individual taxpayer who underpays his or her estimated tax. A taxpayer has an obligation to pay estimated tax for a particular year if he or she has a "required annual payment" for that year. Sec. 6654(d). Because petitioner failed to file a return for each year in issue from 2003 through 2010, she was required to pay estimated tax equal to 90% of the tax owed for each of those years. <u>See</u> sec. 6654(d)(1)(B). Petitioner failed to make

**[\*16]** those payments, and no exception to the addition to tax under section 6654 applies.  See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

We hold petitioner is liable for the addition to tax under section 6654 for each of tax years 2003 through 2010.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

under Rule 155.