T.C. Memo. 2019-93

UNITED STATES TAX COURT

CHRISTOPHER MICHAEL DUFRESNE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13282-17.                    Filed July 25, 2019.

Ronda N. Edgar, for petitioner.

Lori Katrine Shelton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge: Respondent determined the following deficiencies and

penalties with respect to petitioner's Federal income tax for 2010-14 (years in

issue):

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2010 | $89,516 | $17,903 |
| 2011 | 122,513 | 24,503 |
| 2012 | 175,592 | 35,118 |
| 2013 | 121,710 | 24,342 |
| 2014 | 8,819 | -0- |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

After petitioner's concessions the remaining issues for our consideration are whether petitioner: (1) received unreported income in 2010-13 and (2) is liable for accuracy-related penalties under section 6662(a) for 2010-13.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in California when he timely filed his petition.

**[*3]** Petitioner's Background

Petitioner's mother was Sylvia Browne, a well-known psychic who appeared on television, wrote books, and gave lectures. During the years in issue petitioner worked full time as a psychic counselor for his mother's business, Sylvia Browne Corp. (Corporation), an S corporation. On behalf of the Corporation petitioner performed psychic readings as often as seven days a week. Clients were charged $200 for a 30-minute reading.

Until Ms. Browne's death in 2013 she was the majority shareholder of the Corporation. She became ill several years before her death. For 2012 and 2013 petitioner received Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., which showed he owned a 0.01% interest in the Corporation.

Petitioner did not have access to the Corporation's books and records. Following Ms. Browne's death he became the sole heir of her estate and the Corporation. The Corporation was dissolved in 2015.

Petitioner reported wage income from the Corporation during the years in issue as follows:

[*4]

| Year | Wage income |
|------|-------------|
| 2010 | $528,850 |
| 2011 | 120,200 |
| 2012 | 107,600 |
| 2013 | -0- |
| 2014 | 88,850 |

Before 2010 petitioner's income was substantially higher. From 2004-10 he earned approximately $14 million.

Cash Deposits

Petitioner had unreported taxable cash deposits totaling $1,505,546 for 2010-13. According to petitioner these cash deposits were repayments he received from Ms. Browne for loans of approximately $1,490,388 for the payment of past due Federal taxes and for the purchase of real estate properties. Petitioner did not discuss his mother's financial affairs with her, and he was not aware of her net worth. Ms. Browne was in debt at the time of her death.

From 1985 to 2007, petitioner purchased the following five real estate properties: (1) a timeshare in Cabo San Lucas, Mexico (timeshare), (2) a property in Sunnyvale, California (Sunnyvale), (3) a property in Copperopolis, California (Copperopolis), (4) a property on Concord Ridge Court in San Jose, California (Concord Ridge), and (5) a property on LaSeyne in San Jose, California (LaSeyne)

[*5] (collectively, five properties). He produced a letter, with his mother's signature, dated January 1, 2008, which stated that she owed him $1,182,670 for five real estate purchases.

During the years in issue petitioner held the Concord Ridge and Copperopolis properties in his name. From 2010-13 he held the LaSeyne and Sunnyvale properties in his name; he sold both properties in 2013. For the years in issue petitioner was the sole owner of the timeshare.

For 2002-08 and 2010-13 petitioner reported rental income and claimed rental deductions on his Schedules E, Supplemental Income and Loss, for the Sunnyvale and Concord Ridge properties. For 2008 petitioner reported rental income and claimed rental deductions on his Schedule E for the Copperopolis property. For 2010-13 he claimed property tax deductions on his Schedules A, Itemized Deductions, for the Copperopolis and LaSeyne properties. On his 2010 Form 1040, U.S. Individual Income Tax Return, he reported miscellaneous income from the timeshare. For 2011-13 he also reported rental income and deducted expenses on his Schedules E for the timeshare.

Ms. Browne, before her death, lived at the Concord Ridge property and paid petitioner rent. On his Schedules E for 2010-13 petitioner reported rental income of $72,000 with respect to the Concord Ridge property. Petitioner sold the

[*6] property after his mother's death and reported the entire capital gain on his 2014 tax return.

In addition to the five properties petitioner coowned two condominiums with his mother. These condominiums were acquired in 2003. Ms. Browne had a mortgage on at least one of these condominiums. She also owned five other properties, of which petitioner was aware of four.

According to petitioner he lent his mother money to pay a Federal tax liability. He produced a letter dated February 1, 2010, with his mother's signature, which attests that she owes him $307,718 for the payment of past due Federal taxes. In 2010 he was not aware that his mother had tax liens against her or the amount of back taxes she owed.

Petitioner and Ms. Browne did not draft any formal documents reflecting the loans before the extension of the funds. Both letters produced by him are addressed "To Whom It May Concern" and have only Ms. Browne's signature. The letters also do not mention how or when repayment is to occur, a rate of interest, or any collateral or a security.

**[*7]** Respondent's Examination and Notice of Deficiency

Petitioner timely filed Forms 1040 for the years in issue. In 2014 the Internal Revenue Service (respondent) commenced an examination of petitioner's returns for the years in issue. During the examination respondent determined that cash deposits into petitioner's bank accounts were not reflected as taxable income on his returns.

Respondent reconstructed petitioner's income for 2010-13 using the bank deposit method to determine his taxable income. For 2010-13 respondent determined petitioner had unreported taxable cash deposits as follows:

| Year | Unreported deposits |
|------|---------------------|
| 2010 | $295,402 |
| 2011 | 351,968 |
| 2012 | 539,142 |
| 2013 | 319,034 |
| Total | 1,505,546 |

On March 24, 2017, respondent issued to petitioner a notice of deficiency determining that the cash deposits were taxable income and determining section 6662(a) penalties for 2010-13. On November 10, 2016, the revenue agent's immediate supervisor executed a Civil Penalty Approval Form which approved

[*8] substantial understatement penalties pursuant to section 6662 as an alternative position to section 6663 fraud penalties for 2010-13.[1]

OPINION

I.     Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In unreported income cases such as this, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity or demonstrating that the taxpayer actually received unreported income.  See Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); see also Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982) (holding that the Commissioner's assertion of a deficiency is presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income).

If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency was arbitrary or erroneous.  See

---

[1]Respondent did not determine a fraud penalty in the notice of deficiency.

**[*9]** <u>Hardy v. Commissioner</u>, 181 F.3d 1002, 1004 (9th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-97.  Where the taxpayer failed to keep sufficient records under section 6001, the Commissioner may employ any reasonable method to reconstruct a taxpayer's income and thereby lay the requisite evidentiary foundation.  <u>See</u> <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 693 (1989).  The stipulated exhibits included copies of bank account and deposit statements for petitioner's bank accounts for the years in issue.  For 2010-13 respondent used these statements to reconstruct petitioner's gross income using the bank deposit method.  "The use of the bank deposit method for computing income has long been sanctioned by the courts."  <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 656 (1975), <u>aff'd</u>, 566 F.2d 2 (6th Cir. 1977).  "A bank deposit is prima facie evidence of income and * * * [the Commissioner] need not prove a likely source of that income."  <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986) (citing <u>Estate of Mason v. Commissioner</u>, 64 T.C. at 656-657).

Respondent has established the requisite minimal evidentiary foundation linking petitioner with the income from the cash deposits.  Therefore, petitioner bears the burden of proving that respondent's deficiency determinations are arbitrary or erroneous.  Under section 7491(a)(1) the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any

**[\*10]** factual issue relevant to ascertaining the taxpayer's liability. See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001). Petitioner contends that he meets the requirements of section 7491(a) to shift the burden of proof to respondent. We find that petitioner's evidence regarding the nature of the cash deposits is not credible and does not justify shifting the burden of proof under section 7491(a)(1). The burden of proof remains with petitioner.

II.     Unreported Income

Respondent contends that the cash deposits constitute unreported income which petitioner should have included as taxable income on his Federal tax returns for 2010-13. Respondent further contends that the cash deposits are disguised compensation. Petitioner does not dispute the amounts of the cash deposits but contends that the cash deposits are not taxable income because they are repayments for loans between himself and his mother.

According to petitioner's testimony his income from the Corporation decreased during the years in issue because the Corporation struggled financially, but his hours remained consistent. He testified that he was willing to accept a lower salary because of his mother's ill health and their close relationship, and because he knew he would be compensated later when the Corporation was able to pay his customary salary.

**[\*11]** Section 61(a) defines gross income as "all income from whatever source derived". Gross income includes any funds that the taxpayer receives lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay. See James v. United States, 366 U.S. 213, 219 (1961). It does not include loans. Commissioner v. Tufts, 461 U.S. 300, 307 (1983). Intrafamily transactions, such as the purported loans between petitioner and Ms. Browne, are evaluated under heightened scrutiny. See Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), aff'd per curiam, 192 F.2d 391 (2d Cir. 1951).

A.      Purported Loans

For a bona fide loan to exist the parties to the transaction must have had an actual, good-faith intent to establish a debtor-creditor relationship at the time the funds were advanced. Beaver v. Commissioner, 55 T.C. 85, 91 (1970). An intent to establish a debtor-creditor relationship exists if the debtor intends to repay the loan and the creditor intends to enforce the repayment. Id.; Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970).

Objective factors may be considered to determine the parties' intent and whether a bona fide loan occurred, and no single factor is dispositive. See Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000), aff'g T.C. Memo. 1998-121; Frierdich v. Commissioner, 925 F.2d 180, 182 (7th Cir. 1991), aff'g

**[\*12]** T.C. Memo. 1989-393.  We examine the following factors to determine whether the cash deposits petitioner received were repayments of loans:

(1) the ability of the borrower to repay;

(2) the existence or nonexistence of a debt instrument;

(3) security, interest, a fixed repayment date, and a repayment schedule;

(4) how the parties' records and conduct reflect the transaction;

(5) whether the borrower has made repayments;

(6) whether the lender had demanded repayment;

(7) the likelihood that the loans were disguised compensation for services; and

(8) the testimony of the purported borrower and lender.

Welch v. Commissioner, 204 F.3d at 1230; see also Kaider v. Commissioner, T.C. Memo. 2011-174.

### 1.      The Ability of the Borrower To Repay

Courts assess the ability to repay by whether there was "a reasonable expectation of repayment in light of the economic realities of the situation." Fisher v. Commissioner, 54 T.C. at 910.  Petitioner testified that he expected his mother to fully repay the purported loans.  He claims that he bought five properties on her behalf.  He further testified that he bought property on behalf of his mother

[*13] because he would qualify for lower loan interest rates than the rates she would have qualified for on her own.

Petitioner did not discuss his mother's finances with her and assumed that she had poor credit following her bankruptcy filing. He testified that his mother had poor credit and would have had difficulty obtaining a bank loan. There is no evidence, when the funds were advanced, that Ms. Browne had the ability to repay petitioner. See Welch v. Commissioner, 204 F.3d at 1230.

### 2. Existence or Nonexistence of Debt Instrument

No contemporaneous debt instruments were drafted to memorialize the purported loans from petitioner to his mother. Petitioner produced two letters purportedly signed by Ms. Browne attesting to the purported loans in 2008 and 2010, years after the first purported borrowing for a real estate property. While "[i]ntra-family loans are many times informal arrangements which may not comply with all of the customary legal formalities that would surround a commercial loan," Zohoury v. Commissioner, T.C. Memo. 1983-597, 1983 Tax Ct. Memo LEXIS 193, at*18, the lack of contemporaneous debt instruments weighs against petitioner's argument that the parties intended to create bona fide loans.

**[\*14]**     3.     Security, Interest, a Fixed Repayment Date, and a Repayment Schedule

Interest and a fixed schedule for repayment are characteristics of a true debtor-creditor relationship.  See Frierdich v. Commissioner, 925 F.2d at 183-184; Haag v. Commissioner, 88 T.C. 604, 616 (1987), aff'd without published opinion, 855 F.2d 855 (8th Cir. 1988).  The two letters attesting to the purported loans do not provide for an interest rate, a fixed schedule for repayment, or any security.  Petitioner also provided no other evidence of an interest rate, a repayment schedule, or any security.

        4.     How the Parties' Records and Conduct Reflect the Transaction

Petitioner provided a record, purportedly kept by a Corporation employee, of Ms. Browne's payments to him.  He testified that Ms. Browne wrote checks out to cash for a Corporation employee to then cash and deposit into petitioner's bank accounts.  This document consists of a list of dates, check numbers, check amounts, and amounts paid to petitioner.  On this document the amount of the check often exceeds the amount purportedly paid to petitioner.  He did not provide any of Ms. Browne's canceled checks to support his testimony or any other evidence to support the document, such as testimony of the Corporation employee who purportedly made and kept the record of the loan repayments.

**[*15]**     5.     <u>Whether the Borrower Has Made Repayment</u>

According to petitioner, when his income from the Corporation decreased or he needed additional income, he would request payments from his mother. He testified that to repay the purported loans Ms. Browne would write personal checks to a Corporation employee, who then would cash the checks and deposit the cash into petitioner's bank accounts. According to his testimony, a Corporation employee kept a record of the purported repayments for 2010-13. While petitioner testified that Ms. Browne had died before fully repaying the purported loans, he claimed that she had made unscheduled repayments to him. There is no evidence to support these unscheduled repayments, except for the uncorroborated document, <u>see</u> <u>supra</u> p.14, and petitioner's self-serving testimony.

6.     <u>Whether the Lender Had Demanded Repayment</u>

Petitioner testified that when he requested funds toward repayment from his mother she was responsive to his requests and would comply. However, there is no evidence to support his claim.

7.     <u>The Likelihood That the Loans Were Disguised Compensation for Services</u>

Respondent asserts that the cash deposits petitioner received were payments to compensate him for his services to the Corporation. During the years in issue

[*16] petitioner's salary substantially decreased, and in 2013 he reportedly received no income. He testified that during the years in issue he was still performing readings, and his services to the Corporation had not decreased.

In 2010 the cash deposits in petitioner's bank accounts, combined with his Corporation salary, resulted in a salary more consistent with prior years' salaries. For 2011-13 his cash deposits were well in excess of the wages reported on his Federal income tax returns but not as high as prior years' wages. The cash deposits were likely compensation for his services to the Corporation rather than repayment of loans.

### 8. The Testimony of the Purported Borrower and Lender

This Court is not required to accept a taxpayer's self-serving testimony. See Tokarski v. Commissioner, 87 T.C. at 77. Petitioner's testimony failed to corroborate his claim of bona fide loans with sufficient reliable evidence. He claimed that he lent his mother substantial funds without a clear understanding of her finances.

Petitioner testified that he lent Ms. Browne funds to pay for liabilities related to taxes, the nature and extent of which he was unaware. The only evidence he produced to support this claim was a letter indicating $307,718 was lent to his mother for paying part of her "past due Federal taxes".

[*17] Throughout his testimony petitioner also contended that he purchased properties on his mother's behalf. He testified that she would make payments to him after he purchased the properties. There is no convincing evidence that she made payments to him for any of the five properties, except the rent payments for the Concord Ridge property.

California law requires the purchase of property to be accompanied by some memorandum in writing that is prescribed by the party charged. Cal. Civ. Code sec. 1624 (West 2015). The writing must show what the price is and when the price is to be paid. Breckinridge v. Crocker, 21 P. 179, 181 (Cal. 1889). The letter regarding the five properties does not address anything about when repayment will occur. There is no evidence that Ms. Browne ever had any ownership interest in any of the properties referenced in the letter petitioner provided. All of the income and tax benefits associated with these properties were reported on petitioner's Federal income tax returns.

We reject petitioner's contentions that he made loans to his mother to help her purchase the five properties. There is no evidence to support his claim that he purchased properties on her behalf and that she was repaying him for such purchases. He had sole ownership of the five properties, and his mother owned

[*18] numerous additional properties. Further, his testimony was inconsistent and illogical, and he did not provide any other credible evidence to support it.

B.   Conclusion

After analyzing the factors, we conclude that the purported loans between petitioner and Ms. Browne do not withstand heightened scrutiny to be considered bona fide loans. The lack of records and substantiating evidence is particularly detrimental to petitioner's claim of bona fide loans.

Accordingly, we find that the cash deposits constitute unreported income and were improperly excluded from petitioner's taxable income on his 2010-13 Federal income tax returns. Respondent contends that the cash payments were compensation for petitioner's services to the Corporation. Petitioner provided no evidence that refutes this argument.

III.   Penalty Pursuant to Section 6662(a)

For 2010-13 respondent determined that petitioner is liable for accuracy-related penalties pursuant to section 6662(a). Under section 7491(c) the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose them. See Higbee v. Commissioner, 116 T.C. at 446. However, once the Commissioner has met the burden of production, the burden of proof remains with

[*19] the taxpayer, including the burden of proving that the penalty is inappropriate. Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

In Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016), we held that the Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b). Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." The Civil Penalty Approval Form was signed before the first formal communication of penalties, the notice of deficiency, giving petitioner the right to challenge them. See Clay v. Commissioner, 152 T.C. __, __ (slip op. at 44) (Apr. 24, 2019).

Section 6662(a) imposes a 20% penalty on any portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations within the meaning of subsection (b)(1), or any substantial understatement of income tax within the meaning of subsection (b)(2). Respondent asserts that petitioner had underpayments due to both substantial understatements of income tax and negligence for 2010-13. Only one accuracy-

[*20] related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set out in section 6662(b). Sec. 1.6662-2(c), Income Tax Regs.

An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return, less any rebate. Sec. 6662(d)(2)(A). An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Respondent has met the initial burden of production because our conclusions as to the deficiencies result in the following substantial understatements of income tax:

| Year | 10% of tax required to be shown | Understatement |
|------|------|------|
| 2010 | $22,956 | $89,516 |
| 2011 | 12,251 | 122,513 |
| 2012 | 17,519 | 175,192 |
| 2013 | 24,729 | 121,710 |

The burden is on petitioner to prove that the penalties are inappropriate.

The section 6662(a) penalty does not apply with respect to any portion of the underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). Regulations promulgated under section

**[*21]** 6664(c) provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner did not provide persuasive evidence that his underpayments were attributable to reasonable cause or that he acted in good faith. Consequently, he is liable for the accuracy-related penalties determined by respondent under section 6662(a).

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.